No. 22758.

OSCAR ARMSTEAD, JR. *v.* THE PEOPLE OF THE STATE OF COLORADO.
(452 P.2d 8)

Decided March 24, 1969.     Rehearing denied April 14, 1969.

MENIN & HARTHUN, SAMUEL D. MENIN, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, JAMES F. PAMP, Assistant, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE McWILLIAMS.

IN a four count information one Oscar Armstead, Jr., hereinafter referred to as the defendant, was charged with kidnapping, assault to rape, forcible rape and assault with a deadly weapon, namely, a knife. In each of these four counts the victim was designated as one Clara C. Sainz, who hereinafter will be referred to as the prosecutrix.

Upon trial, at the conclusion of all the evidence, the trial court on motion dismissed the count charging assault to rape. The jury thereafter returned verdicts adjudging the defendant guilty of kidnapping and rape, but not guilty of assault with a deadly weapon. Based on these two guilty verdicts, the defendant was then sentenced to concurrent terms in the state penitentiary, and by this writ of error the defendant now seeks reversal of the judgment and sentence thus entered.

In this court the defendant contends that the two convictions suffered by him should be reversed for the following reasons: (1) the People's evidence is said to be so inherently incredible as to be unworthy of belief and hence legally insufficient to support the verdicts returned by the jury; (2) the defendant's constitutional rights were violated in that he did not have the assistance of counsel when he was forced to participate in a so-called police lineup; (3) the several verdicts are repugnant and inconsistent and the not guilty verdict on the charge of assault with a deadly weapon invalidates the guilty verdicts on the charges of kidnapping and rape; (4) the verdicts of the jury were signed by one who though acting as the foreman was in reality not a member of the jury; and (5) the trial judge was prejudiced and by virtue thereof the defendant was denied his constitutional right to a fair trial. Parenthetically, it should be noted that points one, two and three above referred to were set forth in defendant's motion for a new trial, but that points four and five were not men-

tioned in the motion for new trial. We should also mention that counsel here did not represent the defendant at the trial.

As concerns the count of forcible rape, the defendant was charged with having feloniously and forcibly raped the prosecutrix, against her will, she having resisted and her resistance having been overcome by force and violence. C.R.S. 1963, 40-2-25 (1) (d). It is to be noted that the degree of rape with which the defendant was charged was that of rape in the first degree. In this regard *see* C.R.S. 1963, 40-2-26, which declares that *all* cases of rape defined in C.R.S. 1963, 40-2-25 as rape in the first degree shall be deemed as carnal knowledge of a female person "forcibly and against her will."

Our study of the record convinces us that there is evidence to support the verdict of the jury that the defendant was guilty of forcible rape. Significantly, we note that the argument advanced here by counsel concerning the alleged insufficiency of the evidence is directed almost exclusively to the rape charge, as opposed to the kidnapping charge, about which little or no mention is made. Be that as it may, we now summarize the incriminating evidence brought forward by the People upon trial, as such relates to not only the charge of rape, but kidnapping as well.

The record discloses that in the early hours of September 10, 1966, the prosecutrix, age 20, and her date, one Romero, were snugly ensconced in the front seat of Romero's vehicle which had been parked near the Denver airport. At this particular time and place, by apparent common consent of the parties, a bit of innocent "necking" was in progress. This nocturnal activity came to an abrupt halt when both suddenly sensed that "someone" was around at the rear of Romero's car. This third party, aware that his presence had become known, then proceeded to break the right rear window in the Romero vehicle, and he then reached inside the vehicle and proceeded to open the front door on the driver's side. This

party next began to pull the prosecutrix from the car and when Romero remonstrated and tried to pull the prosecutrix back into the car, the assailant pointed what was believed to be either a knife or razor at Romero's throat and told him to "let go."

As relating to the general issue of force, the prosecutrix related the following sequence of events: she was forcibly pulled out of the car, being dragged over the seat and the broken glass; the assailant then twisted her arm and forced her to accompany him by dragging her to his vehicle which was parked nearby and then threw her into his car; the assailant then drove to a secluded spot some ten or twelve blocks from the abduction scene; and further that during this short ride the prosecutrix out of fright and fear was shaking and screaming and when she threatened to jump from the car, the assailant stated that if she did jump he would "shoot out her brains"; that her assailant then proceeded to rape her twice and thereafter drove her to a nearby park, where he let her out and quickly drove off.

At trial both the prosecutrix and Romero identified the defendant as the person who kidnapped the prosecutrix from Romero's car and the prosecutrix also went on to identify the defendant as the person who thereafter raped her twice. Both of these identifications could with propriety be characterized as "positive" identifications, each witness evidencing no doubt but that it was the defendant who was the perpetrator of these several offenses.

Additionally, there was testimony from fingerprint experts which tended not only to corroborate the testimony of the prosecutrix and Romero, but in and of itself also tended to tie the defendant into this entire transaction. One expert stated that he "lifted" certain prints which he found on the roof of the Romero vehicle immediately over the broken right rear window. After his arrest, which occurred the day after the offense, the defendant's finger and palm prints were taken at police

headquarters. Another expert thereafter compared Romero's admitted palm prints with the latent prints taken from the Romero vehicle and this expert then testified that based on his study and comparison it was the defendant's palm prints which had been "lifted" from Romero's car.

The defendant's theory of the case is that this is a case of mistaken identity. He testified in his own behalf and denied that he either kidnapped, assaulted, or raped the prosecutrix and stated that he was home with his wife and children at the time when the offense allegedly took place.

As concerns the sufficiency of the evidence, counsel argues, for example, that it is "physically impossible" for any person to break a safety glass window in the modern automobile, be it with a foreign object, let alone a fist. Counsel also emphasizes what he claims are the inconsistencies and gaps in the testimony of the prosecutrix and Romero. But after all is said and done, it was still a jury question as to whether the defendant was the person who kidnapped and raped the prosecutrix. The jury has now determined that it was the defendant who thus kidnapped and raped the prosecutrix, and there being much evidence to support this determination, we, as a reviewing court, are not at liberty to upset the jury's verdict. Similarly, we find *much* evidence that this was a *forcible* rape. Suffice it to say, then, in our view there is evidence to support the verdicts of the jury as to both the kidnapping and rape charges and such being the case the verdicts should not be disturbed by us. In this general connection see *Bustos v. People,* 158 Colo. 451, 408 P.2d 64, where we stated that it is not the duty of this court to substitute its judgment or conclusions for those of the jury when determining the veracity of the identifying witnesses.

It is also argued that the defendant's constitutional rights were violated in connection with the so-called police lineup. A bit of detail will put this aspect of the

case in proper focus. The offense occurred in the early morning hours on September 10, 1966. Both the prosecutrix and Romero upon questioning by the police stated that their assailant was a negro, and both gave, as best they could, a description of him. On the afternoon of September 10, 1966, the prosecutrix and Romero witnessed a so-called police lineup. Some six or seven persons, *all* negroes, were placed in the lineup. However, both the prosecutrix and Romero testified upon trial that their assailant was not one of those in the lineup.

One day later, the prosecutrix was shown a number of police "mug shots," and she testified that out of this batch of photographs she identified one as being the picture of the person who had kidnapped and raped her. The photo was that of the defendant. Acting on this identification, the police soon arrested the defendant at his place of employment, which was a liquor store on East Colfax.

On September 12, 1966, the police then conducted a second lineup, and the defendant was one of those placed in this particular lineup. Again there were about six or seven in the lineup, and again *all* were negroes. Each such person was asked to state his name, address and the type of car which he owned. Both the prosecutrix and Romero testified that they immediately identified the person in the lineup who had assaulted them, and that the person thus identified was the defendant. Thereafter, a criminal information was filed against the defendant and on arraignment, the defendant apparently being an indigent person, the public defender was appointed to represent him.

■ Counsel argues that *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2nd 1149, is applicable to the present controversy and requires a reversal of the conviction. In our view, however, the *Wade* case is not applicable to the present case for several reasons. In the first place the United States Supreme Court in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2nd 1199,

specifically held that the rule announced in *Wade* affected "only those cases and all future cases which involve confrontation for identification purposes conducted in the absence of counsel *after* this date [June 12, 1967]." (Emphasis added.) The confrontation in the instant case occurred *prior* to June 12, 1967, namely, on September 12, 1966, and hence the *Wade* case for this reason alone does not control the instant one. This then being the chronology, we are not here called upon to determine whether the rule of *Wade* would apply to a *pre*-indictment lineup, as opposed to a *post*-indictment lineup.

▆ We find no merit in the argument that the verdicts returned by the jury were inconsistent to the end that the verdict of not guilty on the charge of assault with a deadly weapon somehow vitiates the guilty verdicts on the counts alleging kidnapping and rape. Our examination of the record discloses a number of logical explanations for what at first blush might appear to be at least some degree of inconsistency on the part of the jury. As indicated at the outset, the four charges filed against the defendant all stated that the prosecutrix, as opposed to her escort, Romero, was the victim. However, the record would lend itself to the conclusion that while the defendant kidnapped and raped the prosecutrix, his assault with a deadly weapon, namely, a knife, was directed not so much at the prosecutrix as it was at Romero. In any event, the alleged inconsistency of verdicts in the instant case is clearly not of the type perceived by a majority of this court in *Way v. People*, 165 Colo. 161, 437 P.2d 535, and *Robles v. People*, 160 Colo. 297, 417 P.2d 232. Suffice it to say, we find no such inconsistency in verdicts as would invalidate the conviction for kidnapping and rape.

▆▆ As mentioned above, points four and five urged upon us in this court were not contained in defendant's motion for new trial. Such being the case, these matters need not be considered on their merits. Colo. R. Crim. P. 37(b). However, lest the wrong impression be conveyed,

neither of these matters has substance. The matter urged in point four is apparently based on what appears to be a mere misspelling of a name, and a very slight one at that, by the division clerk in compiling a list of jurors sworn to try defendant's case. Suffice it to say that there is nothing before us to indicate that the foreman of defendant's jury was not a juror duly sworn to try the case.

■ Also, the contention advanced here for the first time that the trial judge evidenced prejudice and bias against the defendant to the end that the defendant did not receive a fair trial is in our view totally without foundation and is in nowise supported by the record.

The defendant, who had no prior felony conviction, received a sentence of from thirty years to life on the rape charge, and a sentence of from ten to thirty years on the kidnapping charge, the sentences to be served concurrently. However, our consideration of the record convinces us that there is nothing which would justify a reversal of defendant's convictions. In our view the defendant was ably represented both in the trial court and here and the jury has now resolved the only real issue in the case, namely, the question of identity.

The judgment is therefor affirmed.

MR. JUSTICE DAY, MR. JUSTICE PRINGLE and MR. JUSTICE HODGES concur.