## No. 24279.

### THE PEOPLE OF THE STATE OF COLORADO *v.*
### ROBERT HARRY BOWEN.

(490 P.2d 295)

Decided November 8, 1971.

JAMES D. McKEVITT, District Attorney, GREGORY A. MUELLER, Assistant, JARVIS W. SECCOMBE, Chief Deputy, EDWARD A. SIMONS, Deputy, for plaintiff in error.

ROLLIE R. ROGERS, State Public Defender, J. D. MAC-FARLANE, Chief Deputy, KENNETH J. RUSSELL, Deputy, for defendant in error.

*En Banc.*

WILLIAM B. NAUGLE, District Judge,* delivered the opinion of the Court.

Defendant Bowen was charged with robbery. He was tried by the court, having waived jury trial. At the conclusion of the People's case, defendant's motion for acquittal was granted, judgment of acquittal was entered, and the defendant was discharged. The People have pro-

secuted this writ of error seeking clarification of the issues pertaining to a lineup identification.

On November 2, 1968, around midnight, Denver Police Sergeant James Shoemaker was involved in an investigation in the 300 block of Broadway. As he walked toward his car, two men approached him. One of the men threw his arms around Shoemaker and the other started beating him. When Shoemaker told his assailants he was a police officer, they fled. Shoemaker pursued them, but gave up the chase when his attackers ran into an alley.

On November 13 or 14, Shoemaker viewed photographs and identified one of the men pictured as being the taller of the two assailants. A pick-up order was placed and the defendant was arrested on November 20. A police lineup was conducted that afternoon and Shoemaker again identified the defendant.

At trial, Shoemaker testified to the above, and in addition, he testified that he could see the two men clearly as they approached him and he gave a detailed description of their physical appearance and dress. He stated that he clearly saw the face of the man who struck him and that he observed the two men for a period of up to three minutes. The lighting conditions were described as good. Shoemaker related that he had been with the Denver Police Department for 18 years and that he had much experience in noting with particularity the physical descriptions of people. He said that he could identify his assailants based solely upon his encounter with them.

After Shoemaker had touched upon the photographic and lineup identifications, defense counsel stated that an area was being approached where objections might be in order concerning the admissibility of the identification evidence.

The trial court then advised the People that they were to demonstrate that (1) the *per se* exclusionary rule did not apply because of the lineup identification, and (2) that if that rule did not apply, that an in-court identifi-

cation would not be tainted by either the lineup or photographic identification.

At this point, the testimony of Shoemaker was interrupted and Detective William Rogers of the Denver Police Department was called to the stand. He testified that he conducted the lineup. He stated that the defendant was informed on the morning of November 20 that he was going to be in a lineup at 3:00 p.m. The defendant had not as yet been charged. Rogers testified that he read the department lineup information sheet to the defendant. This form stated:

"You are going to be in a line-up at 3:00 p.m. If you wish, we will call the Public Defender at no cost to you, or an attorney, to request his presence at the line-up."

Rogers also testified that the defendant had been given a *Miranda* warning earlier. The defendant signed the lineup information sheet and indicated that he did not want an attorney. Consequently, the lineup was conducted without the presence of an attorney for the defendant.

Shoemaker was recalled to the stand and testified that he could have made an in-court identification of his assailant if the lineup had never been conducted.

■ After lengthy argument by counsel, the trial court refused to permit an in-court identification of the defendant by Shoemaker as his assailant. Although several grounds were given by the trial court for excluding the in-court identification, the only valid ground is that the defendant had not been adequately advised that he had the right to have counsel appointed for him if he could not afford an attorney, or that he could have an attorney of his own choosing at the lineup. We agree with the trial court's view that the statements on the lineup information sheet did not reach the dignity of being advised of rights under the Sixth Amendment. Therefore, the trial court properly concluded, as a matter of law, that the evidence failed to demonstrate that the defen-

dant had made an intelligent waiver of his right to an attorney at the lineup.

■ However, the imposition here by the trial court of the so-called *"per se* exclusionary rule" as defined in *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) was erroneous. Having made the findings and conclusions that it did with regard to the lineup, the trial court should have thereupon afforded the People the opportunity of showing that the in-court identification was not tainted by the illegal lineup. In other words, if evidence was presented showing that the in-court identification of the defendant had an independent origin and the trial court so found, the in-court identification would have been admissible.

As we analyze *Gilbert* and *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the *"per se* exclusionary rule"* as defined in *Gilbert* was not intended to be imposable in all cases where there could be an independent source for an in-court identification in the case of an illegal lineup. It should also be borne in mind that this was a trial to the court as the fact finder, rather than a trial to a jury, where an exposure to the jury of a tainted lineup as a basis for an in-court identification would require the application of the *"per se* exclusionary rule."* If this case had been tried to a jury, the trial court would have certainly required that all pertinent testimony on identification be first presented at an *in camera* hearing. If the trial court found a tainted lineup, then certainly the door would not have been closed on the opportunity to show an independent source for the in-court identification at the *in camera* hearing. As a result the trial court would be justified in allowing the in-court identification into evidence on a finding that the in-court identification was not tainted by the illegal lineup. *See Neighbors v. People,* 171 Colo. 349, 467 P.2d 804. This being a trial to the court, it is our view that the opportunity to show an independent source should not

have been foreclosed. We therefore disapprove the trial court's judgment of acquittal.

Although we held in *Jaggers v. People,* 174 Colo. 430, 484 P.2d 796 (1971) that a defendant had waived his right to counsel where, in addition to the lineup waiver, there was also an advisement of rights form containing all the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, we are not convinced that there was an intelligent and knowing waiver of the right to counsel in the case now before us. The only indication in the record that the defendant received a *Miranda* warning is contained in the testimony of Detective Rogers. No advisement form was introduced into evidence. The lineup information sheet used in this case is phrased in language which almost negates its import. The People's burden of proving that any waiver is knowingly and intelligently made was not met here. *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *People v. Kelley,* 172 Colo. 39, 470 P.2d 32 (1970).

▆▆ Although the trial court was correct in determining that the lineup identification was violative of the defendant's rights, it erred in not proceeding further with the hearing to determine and make a finding as to whether an in-court identification independent of the lineup identification could have been made by Shoemaker. The trial court should have given, but obviously did not give any consideration to the testimony regarding Shoemaker's ability to identify the defendant independently of the lineup identification.

▆▆ Shoemaker, an experienced police officer, had ample opportunity to observe his assailants from close proximity and under good lighting conditions. He made his first identification of the unknown assailant from photographs furnished him by other officers. Since there had been a violative lineup identification, the burden of proof was on the People to show an untainted identification. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct.

407, 9 L.Ed.2d 441 (1963); *Neitz v. People,* 170 Colo. 428, 462 P.2d 498 (1970).

The trial court alluded to the possible taint of the original photographic identification, but a full hearing was not held to determine whether defendant's rights were violated by the method used when Shoemaker identified the defendant from the photograph. In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), it was held that where there was a pretrial identification by photograph, an in-court identification would be permitted unless there is a showing that the pretrial procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. These factors were never inquired into by the trial court. These failures by the trial court in this case are substantial.

■ This Court has considered and applied the rule of *Simmons* on several occasions. *Martinez v. People,* 174 Colo. 125, 482 P.2d 375 (1971); *Bravo v. People,* 171 Colo. 418, 467 P.2d 814 (1970); *Neighbors v. People,* 171 Colo. 349, 467 P.2d 804 (1970). The plain import of all these cases is that where there is a question of whether an in-court identification would be tainted by a prior out-of-court identification, the trial court must hold a hearing to determine if there is a taint or whether there is an independent source upon which the eyewitness can base his in-court identification. *Clemons v. United States,* 408 F.2d 1230 (D.C. Cir. 1968).

The application of the so-called *per se* exclusionary rule in this case was improper on the basis of this record.

The judgment of acquittal is disapproved.

WILLIAM B. NAUGLE, District Judge,* delivered the opinion of the Court.

HOWARD E. PURDY, District Judge,* participating.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE LEE not participating.

---

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.