# No. 24318

## Frank Joseph Fresquez v.
## The People of the State of Colorado
(497 P.2d 1246)

Decided May 8, 1972.

222

William M. Cohen, Peter Rogers, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavaliere, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Frank Fresquez was found guilty by a jury of grand theft and conspiracy to commit grand theft. By writ of error, he urges reversal on several grounds, none of which have merit as a basis for reversing this conviction. We therefore affirm the trial court's judgment.

These are the facts pertinent to the resolution of the significant issues presented. On February 16, 1968, at about 5:00 p.m., two men entered a Boulder jewelry store. One of the men, later identified as the defendant, asked to see silverware, and he went to the rear of the store with the clerk, Mrs. Cortese. The second man remained at the front of the store, near a display case containing diamond rings. After five to seven minutes, the first man joined the other at the front of the store at the diamond display case. A short time after the two men left the store, a tray of diamond rings valued at approximately $2,145 was discovered missing. The owner of the store testified that he had last seen the rings about 30 minutes before the men entered his store, and that between the time he last saw the rings and the time they were discovered missing the two men were the only customers who had been in the store.

The police were notified and descriptions of the two men were given by Mrs. Cortese and by the store owner, Mr. Whittingham. Mrs. Cortese's description was in all respects similar to those she later gave with the exception that her first description deleted any mention of acne scars or pockmarks on the face of the man to whom she had shown the silverware. Later that same evening, two detectives went to Mrs. Cortese's home where they showed her 4 to 5 sheets of paper each containing 25-30 photographs. Mrs. Cortese made no identification from these photographs.

On March 4th, the detectives returned to Mrs. Cortese's home with 10 glossy photographs and a Denver police bulletin depicting six wanted men. The police bulletin contained a picture of defendant Fresquez. The bulletin was apparently used because no glossy photo of Fresquez was available. Mrs. Cortese identified the picture of the defendant as the man who had been in the store, although she said that

she would prefer to see him in person before making a positive identification as she did not like to make identifications from pictures.

On March 6th, Mrs. Cortese was taken to Denver to view a police lineup. The defendant was one of the subjects and Mrs. Cortese identified him at that time.

A pretrial hearing was held on defendant's motion to suppress any in-court identifications. After considering a great deal of testimony, with searching cross-examination, the judge denied the motion to suppress and ruled, in effect, that Mrs. Cortese could make an in-court identification based on an independent recollection of the image of the defendant in her mind which she had made at the time of the event. At this hearing, the trial judge made no ruling as to the admissibility of any testimony regarding the extra-judicial identification procedures. With respect thereto, he left two questions open. One, whether the defendant was represented by counsel at the lineup, as the district attorney offered to prove that a representative of the Public Defender's office had been present. Secondly, only 7 of the 10 glossy photographs shown to Mrs. Cortese on March 4th were produced at the suppression hearing, and none of the five sheets of pictures shown to her on the night of the theft were produced. The court instructed the district attorney to attempt to produce these at the trial.

At trial, the People presented only two witnesses in their case-in-chief and one in rebuttal. Mrs. Cortese identified the defendant as the man in the store. At the close of her direct testimony, defense counsel requested at an *in camera* hearing that the pictures which were not produced at the suppression hearing be made available so that he could use them in cross-examination in order to challenge the credibility of Mrs. Cortese's in-court identification.

At this *in camera* hearing, it was represented to the trial court by the district attorney that these photographs could not be produced because they were apparently not identified or retained in the investigative file of this case after they were shown to Mrs. Cortese. In effect, the trial court then ruled

that these items were not material in any event because the trial court was thereupon ruling that evidence pertaining to the lineup and the photographic displays be excluded.

It is not clear from the record exactly why these identification procedures were ordered excluded, since the trial judge made no specific findings. No attorney representation may have been the basis for excluding the lineup. Why the trial judge excluded evidence by the district attorney regarding the photographic displays is, however, obscure. No finding was made except the finding at the pretrial *in camera* hearing that Mrs. Cortese could make an in-court identification based upon an independent recollection of the defendant which she had made in her mind at the time of the event. It is implicit, we believe, in this finding that the trial judge was satisfied from all the evidence presented that the photographic displays and the lineup were not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

We make note of defense counsel's statement to the trial court during this *in camera* hearing that the photographs which were shown to Mrs. Cortese, but which were never produced, were the essential items being requested by him for use in his cross-examination of Mrs. Cortese. To this the trial court again stated its ruling that the pictures were not material. The court then stated to the defense counsel that "You are entitled to use any picture that we have here. . ." in the cross-examination of Mrs. Cortese.

Just prior to the termination of this *in camera* hearing, the trial court made a ruling that defense counsel's "request on behalf of the defendant is denied." As we view the record, the only request which the defendant's counsel made was to have those pictures, which were not produced at the pretrial *in camera* hearing, be now made available to him for cross-examination purposes. The court then added "there may be no use of *the* pictures, but only oral examination of the witness as to whether or not she has seen *the* pictures." (Emphasis added.)

It is our view, in considering the entire record of this *in*

*camera* hearing, that the above prohibition against the use of "the" pictures applies only to those pictures which could not have been made available. This is so because the ruling then goes on to state that the witness could be questioned regarding the circumstances under which she viewed these pictures. As to the other pictures which were available, the trial court had already ruled that defense counsel could utilize them in his cross-examination.

The defense consisted of the testimony of the defendant's brother who had already pleaded guilty to a conspiracy charge growing out of the same event. He testified that it was not the defendant, but someone else who was involved with him in the theft. He also stated that he had not been in a camera shop across the street from the jewelry store on the same day the jewelry store theft occurred.

The People then presented in rebuttal the testimony of the owner of a camera shop located across the street from the jewelry store. This person identified the defendant and his brother, who was sitting in the back of the courtroom; he also testified that both had been in his store about thirty minutes before the alleged offense at the jewelry store. No evidence was presented to indicate whether or not the diamond rings, or any part of them, were ever recovered.

On the basis of the foregoing facts and our interpretation of the trial judge's ruling at the pretrial suppression hearing and the *in camera* hearing during the trial, we now discuss the several grounds upon which the defendant maintains that the trial court committed reversible error.

I.

It is maintained that the trial court erred in allowing the in-court identifications of the defendant. The defendant argues that the in-court identifications were allowed without a showing by clear and convincing evidence that they were not tainted by the pretrial identification procedures, which were excluded from evidence by the trial judge. He argues that there was no showing of an independent source as required by *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; *Gilbert v. California,* 388 U.S. 263,

87 S.Ct. 1951, 18 L.Ed.2d 1178; *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

We agree that the People did not meet their burden of showing by clear and convincing evidence that defendant was represented by counsel at the lineup under the *Wade-Gilbert-Stovall* doctrine. Lineup testimony was therefore properly excluded. The People also had the burden of showing that the photographic identification was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The trial court excluded this for no given reason, but obviously not because photographic identification was unduly suggestive. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. The burden, therefore, was on the People to show by clear and convincing evidence that there was an independent source of recollection in order to have an in-court identification. *People v. Bowen,* 176 Colo. 302, 490 P.2d 295.

In *Stovall v. Denno, supra,* it is held that ". . . a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. . . ." This court said in *Edmisten v. People,* 176 Colo. 262, 490 P.2d 58 that "unless the record establishes the taint of mistaken identity, the test of *Stovall* is best left for resolution in the trial court." *See Phillips v. People,* 170 Colo. 520, 462 P.2d 594; *Whitman v. People,* 170 Colo. 189, 460 P.2d 767; *Armstead v. People,* 168 Colo. 485, 452 P.2d 8.

As to a lineup, *United States v. Wade, supra,* teaches that "it is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." 388 U.S. 241. While evidence of the lineup here was properly held to be inadmissible, we find no additional facts concerning the conduct of the lineup which would indicate any irreparable taint which might lead to mistaken identity. Nor is there any indication of suggestive conduct on the part of the police or others who attended the lineup. The witnesses were spread out over a large room; they were interviewed separately; and the testimony shows that

none of the witnesses overheard the interviews with the other witnesses. Mrs. Cortese did not know that the man she had previously identified from the picture would be in the lineup. Less than three weeks had transpired between the theft and the lineup identification.

As to the photographs shown to Mrs. Cortese on the 4th of March, we note that the record contains seven of the ten photographs shown to her. Of the missing photographs, the record contains testimony that these were ". . . photographs generally fitting a Spanish-American mid-twenties description taken from our own files and just included in the grouping so that there were other Spanish-Americans." The witness was originally shown ten photographs and a Denver Police bulletin containing defendant's picture. One of the other persons depicted bears a remarkable resemblance to the defendant. The testimony indicates that there was no suggestiveness in the manner in which the pictures were shown to Mrs. Cortese or in the comments made to her by the detectives at the time they showed the pictures to her. While it is undoubtedly better police practice to preserve all of the pictures shown to a witness for use later, we are unable to say, as a matter of law, that the aforementioned rule of the *Simmons* case was violated here.

In general, we note that Mrs. Cortese had ample opportunity to observe the defendant for approximately five to seven minutes in a very well lighted area. The fact that during this observation Mrs. Cortese was unaware of the occurrence of a crime does little to alter her opportunity for observation. Mrs. Cortese on three occasions gave descriptions of the defendant. Her descriptions on all three occasions were consistent with each other and with the actual appearance of the defendant, with only the aforementioned omission of a pock-marked face in her first description. At the time she pointed out defendant's photograph, she said that while she was fairly certain of her identification, she preferred to see the man in person. Such conduct does not conform to a high degree of susceptibility, but rather is a cautious approach of a woman who wants to be sure of

herself before making an identification. We cannot say, as a matter of law, that the entire pretrial identification procedure was so suggestive or otherwise improper as to irreparably taint the in-court identification.

█ In a situation such as this, the reliability of an in-court identification is properly for the jury as a matter of credibility. *Cf. Schott v. People,* 174 Colo. 15, 482 P.2d 101; *Neighbors v. People,* 171 Colo. 349, 467 P.2d 804. We perceive no reason to disturb the verdict of the jury nor do we think that the trial judge abused his discretion in allowing the in-court identification. *See Constantine v. People,* 178 Colo. 16, 495 P.2d 208.

II.

█ The defendant's next contention is that it was a denial of due process for the trial court to have failed to order production of all the pictures and all of the police bulletins shown to Mrs. Cortese on the night of the theft and also on March 4th. He argues that all of the pictures were necessary in order to allow adequate cross-examination of Mrs. Cortese and that without these pictures, the constitutional guarantees of *Simmons v. United States, supra,* were rendered nugatory.

In *Simmons,* it is stated that:

"Although the pictures might have been of some assistance to the defense, and although it doubtless would have been preferable for the Government to have labeled the pictures shown to each witness and kept them available for trial, we hold that in the circumstances the refusal of the District Court to order their production did not amount to an abuse of discretion. . . ."

The present case differs from *Simmons* in that here defense counsel did attempt to have the missing photographs produced before trial. It is to be noted, however, that it was not the prosecution, but the defense which attempted to have the pictures introduced. Such a practice is a matter of trial tactics. *See Clemons v. United States,* 408 F.2d 1230 (D.C. Cir. 1968). This is not a case which falls under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10

L.Ed.2d 215, which condemned the suppression by the prosecution of evidence which, if made available, would tend to exculpate the defendant or reduce the penalty. *See* also *Barbee v. Warden,* 331 F.2d 842 (4 Cir. 1964). The case of *Thompson v. State,* 85 Nev. 134, 451 P.2d 704 (1969) is also helpful here. In considering the due process question in a situation where the photographic display was used in lieu of a lineup, the Nevada Supreme Court said:

"Although we do not have all of the photographs used at the police station when [defendant] was identified, the witnesses did testify that all were similar, were of persons of the same race and size, that the police officers imposed no suggestive influences, and that their opportunity for observation of the robber was very extensive. Thus we hold that there is no very substantial likelihood of misidentification. Therefore there was no denial of due process of law."

The testimony here indicated that the three missing glossy photographs were of individuals resembling the description given by Mrs. Cortese. It is our view that under the circumstances of this case, the failure to produce all of the photos shown to Mrs. Cortese was not a denial of due process of law. It should again be pointed out here that it was not possible to produce all these photographs for the reasons stated previously in this opinion.

### III.

The defendant also asserts that it was a denial of due process for the court to refuse to allow defense counsel to use the photographs that were available in cross-examination of Mrs. Cortese. The record does not support this assertion. The court ruled that defense counsel was entitled to use any photographs that were available and also said that he could examine Mrs. Cortese with respect to any of the pictures which she was shown even though they could not be produced for the reasons heretofore given.

### IV.

Defendant asserts that the trial court erred in refusing to declare a mistrial when the following exchange took place on cross-examination of Mrs. Cortese:

"Q. Have you talked to Mr. Whittingham at all about this case since February 16?

A. Oh, most certainly.

Q. Have you talked to him about your identification?

A. Beg your pardon?

Q. Have you talked to him about the two suspects and their identification?

A. Oh, naturally, when I got back from Denver *from the lineup* he wanted to know about it." (Emphasis added.)

Defense counsel asked permission to approach the bench at this point, but permission was refused. Counsel then objected in the presence of the jury on the grounds the answer was nonresponsive. The court ordered the last answer of the witness stricken from the record and ordered the jury to disregard it. Counsel also moved for a mistrial and his motion was denied.

The rule is well established that the declaration of a mistrial is a matter within the sound discretion of the trial court, and that this ruling will not be disturbed on review in the absence of a clear abuse of discretion. *Hopper v. People,* 152 Colo. 405, 382 P.2d 540; *Leick v. People,* 136 Colo. 535, 322 P.2d 674; *Bolden v. People,* 139 Colo. 532, 341 P.2d 466. The trial judge is in the best position to judge what effect an answer such as the above has on the jury. In our removed position, we cannot judge this with the same degree of perception as the trial judge.

Moreover, it has been said that a defendant cannot complain of a trial situation which he has himself brought about. *Efsiever v. People,* 105 Colo. 88, 96 P.2d 8; *Phenneger v. People,* 85 Colo. 442, 276 P. 983.

## V.

The defendant next assigns error to the failure of the trial court to give a special instruction on the identification issue. Such an instruction was never requested by the defendant, but he argues that the trial court should have given it *sua sponte,* and that it was plain error not to give such an instruction. The defendant did not raise this point in his motion for judgment of acquittal or in the alternative for

a new trial. In *Ellis v. People,* 114 Colo. 334, 164 P.2d 733, this court held that:

"It is the duty of the trial court to instruct the jury so plainly and accurately on the law of the case that they may comprehend the principles involved. Under our practice it is equally the duty of counsel to assist the court by objection to erroneous instructions, *and by tender of instructions covering matters omitted by the court,* and on failure of counsel therein, error assigned to the giving, or failure to give, pertinent instructions will not be considered on review except where the error is so serious and fundamental *as to be patently prejudicial . . . . Reppin v. People,* 95 Colo. 192, 34 P.2d 71." (Emphasis added.)

Under the circumstances of this case, we do not consider the failure of the court *sua sponte* to specially instruct the jury on the identification issue to be patently prejudicial. The jury was given an instruction concerning credibility of witnesses. This instruction detailed the factors to be considered by them such as means of knowledge, strength of memory, and opportunities for observation. In our view, this instruction adequately covered the identification issue. *See People v. Smith,* 47 Ill. 2d 528, 267 N.E.2d 669.

## VI.

The defendant's remaining assertion of error relating to the trial court's instructions is without merit and requires no discussion except to comment that we have reviewed the instructions and find that they properly and fully instructed the jury. *See Sandoval v. People,* 176 Colo. 414, 490 P.2d 1298 and *Davis v. People,* 112 Colo. 452, 150 P.2d 67.

Judgment affirmed.

MR. CHIEF JUSTICE PRINGLE not participating.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissenting.

MR. JUSTICE GROVES dissenting:

I respectfully dissent but only with respect to Section III of the majority opinion. When the question arose at the trial

as to whether the attorney for the defendant might use the photographs available in the cross-examination of Mrs. Cortese, there was considerable discussion of the matter by court and counsel. The court made several statements of its views, some of which were not entirely consistent. The last ruling made by the court in the matter was as follows:

"Well, the court rules now that Mr. MacDonald's request on behalf of the defendant is denied. There may be no use of the pictures, but only oral examination of the witness as to whether or not she has seen the pictures, what the circumstances were. Please bring the jury in."

It is my interpretation of this ruling that the photographs available could not be used in connection with the cross-examination of the identifying witness. This was clearly an improper restriction on cross-examination. *Archina v. People,* 135 Colo. 8, 307 P.2d 1083 (1957). We cannot speculate on the extent to which defendant's attorney might have affected the credibility of the witness had he been permitted to cross-examine with the photographs. Therefore, the error must be regarded as prejudicial. I would therefore reverse on this basis.

Justice Erickson has authorized me to state that he joins in this dissent.