The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Pete BUENO, Jr., Defendant-Appellant.

No. 78–1084.

Colorado Court of Appeals,
Div. III.

March 26, 1981.

# 1168

J. D. MacFarlane, Atty. Gen., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Donald Eberle, Guy Till, Deputy Dist. Attys., Denver, for plaintiff-appellee.

Greg Walta, State Public Defender, Kenneth M. Gordon, Deputy State Public Defender, Denver, for defendant-appellant.

TURSI, Judge.

Defendant, Pete Bueno, Jr., appeals his conviction by a jury on three counts of aggravated robbery under § 18–4–302, C.R.S.1973, and one count of mandatory sentence for commission of a violent crime under § 16–11–309, C.R.S.1973. We reverse.

On October 30, 1977, a service station located in northwest Denver was robbed by a person described by eyewitnesses as an unshaven Spanish-American male, 5′ 6″ to 5′ 7″ in height, with curly black hair, approximately 30 years of age, and missing his two front lower teeth. The robber was also described as wearing a leather or simulated leather jacket, blue jeans with frayed cuffs, and blue tennis shoes with white stripes. The offense was committed with a single-barrel sawed-off shotgun. The charges against defendant are based on this robbery.

On October 31, 1977, a robbery occurred at a grocery store located in the same vicinity. The robber was described by eyewitnesses as an unshaven, Spanish-American male, about 30 years old, ±C 8″ tall, and missing two teeth in his lower jaw. This robbery was also committed with a single-barrel, sawed-off shotgun.

On November 2, a surveillance was set up at an apartment located at 2300 W. 39th Ave. regarding unrelated aggravated robberies. During the course of the surveillance, defendant was seen leaving the apartment. Defendant was not yet a suspect in the October 30 robbery, but the police officer who reported having seen him knew who he was. Later that day, a search warrant was executed at this address pursuant to the independent investigation, and a sawed-off shotgun was seized which was subsequently described as being "very similar to the one used" in the robbery which took place on October 30.

On November 4, Larry Zimmerman, one of the eyewitnesses to the gas station robbery, selected defendant's picture in a photographic array as the person who robbed him on October 30. Zimmerman viewed several hundred photographs of Caucasian, Spanish-American, and black men before picking out defendant. Upon seeing defendant's picture, he remarked that he

thought this was the man, except that his hair was straighter than it had been on October 30th. Defendant was arrested later that day and placed in a line-up where he was again identified by Zimmerman as the person who had robbed him.

At trial, the three eyewitnesses to the gas station robbery identified defendant. Each testified that the robbery was committed in broad daylight and that while it was going on, they had several opportunities to see defendant's face clearly.

At the close of the prosecution's case-in-chief, defendant's counsel announced that he intended to call Sheryl Shearan as a witness for the defense. Shearan, who had witnessed the similar robbery on October 31, had been endorsed as a witness by the People. However, the People decided not to use her after she did not identify defendant as the one who robbed her on October 31.

The prosecution objected to the defense calling Shearan to testify on the grounds that her failure to identify defendant as the perpetrator of the similar robbery was irrelevant to the charge before the court. Defendant's offer of proof alleged that Shearan had actually excluded him in two separate line-ups as the perpetrator of the second robbery. He argued that because identification was the sole issue in the trial, Shearan's exclusion of him from the line-up was highly relevant in view of the striking similarity of the two offenses. Defendant's theory was that the same person had probably committed both robberies. The fact that an eyewitness to the second robbery had excluded him as the perpetrator of that crime therefore made it less probable that he was the perpetrator of the first robbery. The trial court sustained the prosecution's objection, ruling that Shearan's testimony was inadmissible in the absence of a positive identification of the perpetrator of the second robbery.

## I.

Defendant contends that the trial court erred in not allowing him to call Sheryl Shearan as a witness. He claims that her testimony is both relevant and exculpatory, and that he was effectively deprived of the theory of his defense as a result of her exclusion as a witness. We agree.

■ The admissibility of similar transaction evidence for defensive purposes is a question of first impression in this jurisdiction. Generally, evidence of criminal activity other than that for which the defendant is being tried is inadmissible because of its inherent tendency to prejudice the jury against the defendant and to induce it to find him guilty on the basis of his past activities rather than on the present charge. *See Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959). However, where the necessity of proof on the part of the prosecution mandates the admission of such evidence, it will be admissible if proper procedural protections are observed, *see Stull v. People, supra*, and if the evidentiary tests outlined in *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979) are satisfied.

While *Stull* and *Honey* both involve the introduction of similar transaction evidence by the prosecution, we see nothing in the language or logic of these cases which precludes a defendant's use of such evidence when it may be helpful to him. When a defendant offers such evidence for defensive reasons, the concerns which gave rise initially to the exclusionary rule are no longer relevant. In offering this evidence, the defendant has chosen to assume the risk of any jury prejudice it might engender in return for whatever exculpatory value it may have. Consequently, the safeguards set forth in *Stull* and *Honey* are inapplicable when the defendant is the proponent of similar transaction evidence, and a more lenient standard of admissibility can be applied.

■ In a criminal case, a defendant is entitled to all reasonable opportunities to present evidence which might tend to create a doubt as to his guilt. *People v. Bergeron*, 10 Ill.App.3d 762, 295 N.E.2d 228 (1973); *State v. Garfole*, 76 N.J. 455, 388 A.2d 587 (1978). Subject to Colorado Rule of Evidence 403 and the general rules of

admissibility, we hold that when offered by the defendant, evidence of similar transactions is admissible as long as it is relevant to the guilt or innocence of the accused. *See State v. Garfole, supra; J. Weinstein & M. Berger, Weinstein's Evidence* ¶ 404[15] (1980).

Defendant contends that the similarities between the two offenses give rise to an inference that both crimes were committed by the same person. He argues that because Shearan excluded him as the perpetrator of the grocery store robbery, it can be inferred that he was not the perpetrator of the service station robbery. The prosecution, on the other hand, argues that because the person who robbed the grocery store has never been positively identified, defendant is attempting to prove a negative with a negative, and that any negative inference to be drawn from Shearan's exclusion of defendant as the robber of the grocery store is too attenuated to the issue of identity in defendant's trial to be relevant. We disagree with the People.

■ " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Colorado Rule of Evidence 401. Rule 401 merely restates the common law rule of relevancy. Evidence is not irrelevant simply because it tends to establish a fact through the use of a negative. *See, e. g.,* Colorado Rule of Evidence 803(10). This factor goes to the weight of the evidence rather than its initial admissibility.

■ The only fact of consequence in this case which remained to be proved was the identity of the robber. Defendant's purpose in offering Shearan's testimony was to raise a reasonable doubt in the jury's mind as to identification. We believe that defendant laid a sufficient foundation to establish its relevancy. "The process of constructing an inference of identity ... usually consists in adding together a number of circumstances, each of which by itself might be a feature of many objects, but all of which together make it more probable that they coexist in a single object only. Each additional circumstance reduces the chances of there being more than one object so associated." 2 *J. Wigmore, Evidence* § 412, at 479 (Chadbourn rev. 1979).

■ Here, both robbers were described as unshaven Spanish-American males, 5' 6" to 5' 8" in height, and missing two front lower teeth. Both robbers used single-barrel sawed-off shotguns, both robberies occurred in the same part of town, and they occurred on consecutive days. The fact that the robber of the grocery store has not been positively identified goes to the weight of the evidence and is not sufficient to destroy the basic relevancy of Shearan's testimony. *See 2 J. Wigmore, Evidence* §§ 411–413. Whether Shearan excluded defendant in the line-up or merely failed to identify him is also a question of weight rather than admissibility. Defendant, accepting the risks inherent therein, was entitled to have the jury evaluate her testimony. If the evidence is such that reasonable jurors could infer misidentification, then the trial court's rejection of such evidence can not be said to be harmless. *See Holt v. United States,* 342 F.2d 163 (5th Cir. 1965); *Commonwealth v. Keizer,* — Mass. —, 385 N.E.2d 1001 (1979).

■ The trial court erred in ruling that absent a positive identification of the perpetrator of the second robbery, defendant's tendered evidence was inadmissible. Rather, the test is one of relevancy. The trial court must decide the threshold question of admissibility on a case by case basis. If all of the similar facts and circumstances, taken together, may support a finding that the same person was probably involved in both transactions, then evidence that the defendant did not commit the second transaction is relevant and admissible. *See 2 J. Wigmore, Evidence, supra.*

The People cite *People v. Mulligan,* 193 Colo. 509, 568 P.2d 449 (1977), in support of the proposition that the proffered testimony was inadmissible in the absence of evidence that directly connected a third person with the crime for which defendant is on

trial. However, in *Mulligan*, the defendant sought to introduce evidence that another person had the opportunity or motive for committing the crime for which he was being tried. The identity of the defendant was not at issue. Consequently, the rule in that case is not controlling here.

Relevant evidence may be excluded if its probative value is substantially outweighed by the possibility of unfair prejudice, confusion, or delay. *Cf.* Colorado Rule of Evidence 403. As mentioned above, prejudice is not a factor when the defendant offers similar transaction evidence. In addition, the trial court's statement that it would have allowed the prosecution to use Shearan's testimony if she had identified defendant contains an implicit determination that the evidence would not have confused the jury or caused undue delay in the course of the trial.

## II.

Because several of defendant's other allegations of error are certain to recur during the course of his new trial, we will address them here.

■ The defendant contends that the trial court erred in refusing to suppress Zimmerman's in-court identification of him because the in-court identification was the product of an impermissibly suggestive pretrial line-up. This contention lacks merit.

Pursuant to defendant's motion to suppress, the trial court held an *in camera* hearing in which it concluded that the requirements for admissibility as set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Huguley v. People*, 195 Colo. 259, 577 P.2d 746 (1978), were satisfied. *See also People v. Roybal*, Colo. App., 609 P.2d 1110 (1980). The trial court's factual determinations are supported by evidence in the record and will not be disturbed on review. *See Goodwin v. District Court*, 196 Colo. 246, 586 P.2d 2 (1978).

■ Defendant also contends that the trial court erred in admitting the in-court identifications of the two other eyewitnesses without having conducted a prior *in camera* hearing. The record contains testimony by the eyewitnesses which establishes their independent recollection of defendant's appearance. Consequently, we see no basis for concluding that defendant was prejudiced by the admission of the in-court identifications into evidence.

However, we call attention to *People v. Bowen*, 176 Colo. 302, 490 P.2d 295 (1971) wherein our Supreme Court stated:

"Where there is a question of whether an in-court identification would be tainted by a prior out-of-court identification, the trial court must hold a hearing to determine if there is a taint or whether there is an independent source upon which the eyewitness can base his in-court identification."

Subsequently, the United States Supreme Court has stated that:

"A judicial determination outside the presence of the jury of the admissibility of identification evidence may often be advisable. In some circumstances, not presented here, such a determination may be constitutionally necessary. But it does not follow that the Constitution requires a per se rule compelling such a procedure in every case."

*Watkins v. Sowders*, ——— U.S. ———, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981).

## III.

■ Defendant also contends that the trial court erred in admitting into evidence the sawed-off shotgun seized from the apartment that had been under surveillance. Defendant claims that the required connection under *People v. Penno*, 188 Colo. 307, 534 P.2d 795 (1975), is lacking because he neither lived at the premises where the gun was seized nor were his fingerprints found on it. We disagree.

The evidence at trial established that defendant was seen leaving the apartment from which the gun was seized. In addition, Zimmerman testified that the gun "appeared" to be the same one which was used in the robbery. Finally, all three witnesses testified that defendant was seen in the gas station carrying a green or grayish

plastic garbage sack with some sort of pink fabric in it. When the gun was seized from the apartment, it was found wrapped in a pink fabric and packaged in a green plastic garbage sack. Consequently, the record reflects a sufficient connection between defendant and the gun, and thus, the rule of *People v. Penno, supra,* was satisfied. *See also Gonzales v. People,* 173 Colo. 243, 477 P.2d 363 (1970); *Claxton v. People,* 164 Colo. 283, 434 P.2d 407 (1967).

In view of our disposition of the case, we need not address defendant's remaining allegations of error. Defendant's conviction is reversed, and the cause is remanded to the district court with directions to grant defendant a new trial.

SMITH and KIRSHBAUM, JJ., concur.