**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 13 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOHNNY J. QUINTANA,

        Petitioner - Appellant,

v.

GENE ATHERTON; ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

        Respondents - Appellees.

No. 01-1518
(D.C. No. 97-Z-1975)
(D. Colorado)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **ANDERSON** , and **HARTZ** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Johnny J. Quintana, a state inmate, seeks a certificate of appealability ("COA") that would allow him to appeal from the district court's order denying relief on his habeas petition brought under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). Mr. Quintana contends that he was denied effective assistance of counsel at his trial. But because he has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2), we deny his application for COA and dismiss the appeal.

## I. Facts and proceedings

Mr. Quintana was convicted of aggravated robbery, theft, and crime of violence for having car-jacked at gunpoint a Jeep Wagoneer in September 1989. Mr. Quintana is Hispanic, 5'9" tall, and has dark brown hair. At the time of the car-jacking he was twenty-eight years old and weighed about 180 pounds. The victim described the car-jacker as being white or Hispanic, around 5'7"-5'9", thirty to forty years old, not clean shaven, and having a dark complexion, a medium to stocky build, and short-to-medium-length, dark brown, wavy or curly hair. She stated that he wore dark pants and used a black handgun with his right hand.

Two other crimes are also of interest. Forty-five minutes after the car-jacking, a Safeway grocery store was robbed by a man driving the car-jacked

-2-

Jeep. Also, a month later Mr. Quintana and an accomplice were videotaped while robbing a Radio Shack.

Witnesses to the Safeway robbery variously described the robber as being twenty-eight to thirty-two years old, Hispanic, around 5'8"-6' tall, stocky, and having a dark complexion and black or dark brown, wavy or curly hair. Some witnesses recalled the robber sporting a thin, black mustache and being unshaven or having a half-grown beard; others did not. One witness stated that he "pulled [his] gun with [his] right hand." Only one witness stated that she got a "good look" at the robber; she described him as Hispanic, about 5'9" to 6' tall, "very dark complected," with no facial hair, having dark curly hair, and wearing dark clothing and carrying a black gun. She was not sure whether he had a mustache.

Another Safeway witness, Mr. Barnes, saw the robber only for a few seconds from fifteen feet away, and did not get a good look at him. Immediately after the robbery he could describe the robber only as being around 5'9", Hispanic, stocky, and wearing sunglasses, blue jeans, and a tee shirt.

Six months after the Safeway robbery, Mr. Quintana was placed in a line-up, but none of the witnesses to the Safeway robbery positively identified him as the robber. Mr. Barnes did not observe the line-up.

A few days before Mr. Quintana's trial for car-jacking, the prosecutor sought, over objection, to use the Safeway robbery and Mr. Barnes' testimony as

evidence that Mr. Quintana resembled the Safeway robber and thus was also the person who car-jacked the Jeep. The court ruled that the prosecution could not introduce such evidence because the crimes were not similar. But the court also ruled that Mr. Quintana could introduce the evidence defensively if he so desired. Defense counsel did not introduce any evidence concerning the Safeway robbery, and Mr. Quintana was convicted.

After an unsuccessful state post-conviction proceeding in which the court denied a request for an evidentiary hearing, Mr. Quintana applied for federal habeas relief. The federal evidentiary hearing on Mr. Quintana's ineffective-assistance-of-counsel claim was held ten years after his conviction. At the hearing, his counsel at trial explained that before trial he had reviewed the police and investigation reports from the Safeway robbery and read the witness statements. Since no one had picked Mr. Quintana as the Safeway robber, he considered whether to present evidence of a "reverse similar" crime. Two closely connected criminal acts are said to be "reverse similar" if a defendant can present evidence tending to show he was not involved in one of the crimes, with the hope of leading the jury to infer that he also was not involved in the other crime. *See People v. Bueno*, 626 P.2d 1167, 1169-70 (Colo. Ct. App. 1981) (noting that when a defendant offers such evidence, he assumes the risk of the prejudice it may engender in return for whatever exculpatory value it may have).

Counsel testified that one reason he chose not to present evidence regarding the Safeway robbery was that it could open the door for the prosecution to show that Mr. Quintana worked with a partner (who could have been the Safeway culprit) by presenting evidence of the Radio Shack robbery (in which he had a partner) only one month after the Safeway robbery. Counsel was also concerned that the Safeway witnesses could change their minds in court about being able to identify Mr. Quintana as the robber, and such an identification could expose Mr. Quintana to yet another prosecution. Further, because Mr. Barnes had never been shown a photo array or line-up, counsel believed there was a risk that Mr. Barnes might identify Mr. Quintana in court upon seeing him for the first time in person.

Mr. Quintana raises a single issue in his brief supporting his application for COA: whether his trial counsel's assistance was constitutionally ineffective due to his failure to call the Safeway witnesses. As a related matter, Mr. Quintana argues that his counsel's strategy was unreasonable because counsel never spoke with Mr. Barnes before deciding not to call the Safeway witnesses. (In his docketing statement Mr. Quintana also raised the issue of whether he is entitled to habeas relief because the prosecution elicited testimony suggesting Mr. Quintana had committed other bad acts. That issue was not briefed and is deemed waived. *See Pino v. Higgs*, 75 F.3d 1461, 1463 (10th Cir. 1996).)

## II. Discussion

Mr. Quintana may make a "substantial showing of the denial of a constitutional right" by demonstrating that the ineffective-assistance-of-counsel issue raised is debatable among jurists, or that the question presented deserves further proceedings. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

In a thorough, sixty-six page report adopted by the district court, the magistrate judge carefully reviewed the state record as well as the testimony garnered in the federal evidentiary hearing. Then, applying the controlling rule of law enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and in several Tenth Circuit cases interpreting and applying *Strickland,* the magistrate judge concluded that Mr. Quintana had not established that his counsel was ineffective. In light of the significant risk that calling the Safeway witnesses could backfire, or lead to the admission of evidence of the Radio Shack robbery, the magistrate judge concluded that counsel's decision not to call the Safeway witnesses fell within the range of reasonable representation.

The magistrate judge further concluded that any error by defense counsel in not offering the testimony of the Safeway witnesses made no difference because the totality of the evidence was so strong that there was not a reasonable probability that the jury would have had a reasonable doubt regarding Mr. Quintana's guilt, even if counsel had introduced that testimony.

Mr. Quintana does not challenge the district court's factual findings or its summary of witness testimony other than to argue that the district court fundamentally erred by considering the Safeway witness testimony developed at the federal evidentiary hearing in reaching its finding that most of the Safeway witnesses did not get a good look at the robber. We agree that a court must judge the reasonableness of counsel's trial strategy as of the time of the conduct. *See Strickland*, 466 U.S. at 690. But the record shows that at the federal evidentiary hearing the Safeway witnesses mostly repeated their statements made in 1989-1991 during the police and district attorney investigations, and counsel had reviewed those statements before making his tactical decision. The district court did not prejudice Mr. Quintana by citing the federal hearing record transcript instead of the reports and prior statements.

In response to the court's conclusion that it was tactically reasonable to attempt to keep out evidence of other bad acts, including the Safeway and Radio Shack robberies, Mr. Quintana contends there was no basis for believing either that more than one person was involved in the car-jacking and Safeway robberies or that the car-jacker may have turned the Jeep over to a partner before commission of the Safeway robbery. Thus, he argues, presenting the testimony of the Safeway witnesses would not have opened the door to evidence of other bad acts. Mr. Quintana also argues that the risk of the Safeway witnesses identifying

him in court was insignificant. The magistrate judge's report, however, sets forth why a reasonable defense attorney could weigh the risks rather differently and decide that it was too risky to get into the Safeway robbery at trial. Indeed, the prosecutor had sought to offer evidence of that robbery, presumably believing that it strengthened the case against Mr. Quintana. In particular, the descriptions of the Safeway robber were very similar in many respects to the car-jacking victim's description. Mr. Quintana concedes as much when he argues that because "the descriptions in the [car-jacking and Safeway] robberies were so similar, . . . [it] cut against the notion that two different people were involved." Br. at 48.

Although the district court did not specifically address Mr. Quintana's claim that it was objectively unreasonable for counsel to fail to interview Mr. Barnes before making the decision not to introduce the testimony of the other Safeway witnesses, we conclude that such an interview was not necessary since (1) counsel familiarized himself with Mr. Barnes' testimony from the police and investigative reports and (2) counsel determined that admission of evidence of other bad acts would be prejudicial and it would be risky to allow Mr. Barnes to see Mr. Quintana in person in court.

In short, Mr. Quintana's argument is exactly the kind of second-guessing of reasonable trial strategy expressly forbidden under *Strickland*. *See* 466 U.S. at 689. Upon careful review of Mr. Quintana's arguments and the relevant record,

we conclude that the ineffective-assistance-of-counsel issue is not debatable among jurists, that we would not resolve the issues differently, and that the question presented does not deserve further proceedings. We deny a COA and dismiss the appeal.

Entered for the Court


Harris L Hartz
Circuit Judge