MILWAUKEE ALLIANCE AGAINST RACIST & POLITICAL REPRESSION, an unincorporated association, and David Randall Luce, Plaintiffs-Appellants,

v.

ELECTIONS BOARD OF the STATE OF WISCONSIN, et al., Defendants-Respondents.

Supreme Court

*No. 81–2193. Argued March 4, 1982.—Decided March 26, 1982.*
(Also reported in 317 N.W.2d 420.)

594

For the plaintiffs-appellants there were briefs by *Sandra Edhlund* and *Arthur Heitzer,* both of Milwaukee, and *Lester A. Pines* of Madison, cooperating attorneys, Wisconsin Civil Liberties Union Foundation, and oral argument by *Ms. Edhlund.*

For the defendants-respondents there was a brief and oral argument by *Kevin J. Kennedy,* state elections board, of Madison.

Amicus Curiae brief was filed by *Christopher C. Meyer* of Madison, for The Assembly Committee on Organization.

Amicus Curiae brief was filed by *Raymond M. Dall'Osto* and *Marvin Benton,* both of Milwaukee, for District Council 48, American Federation of State, County and Municipal Employees, AFL–CIO; Esperanza Unida; Na-

tional Association for the Advancement of Colored People—Milwaukee Chapter; Milwaukee Urban League; National Association of Blacks in Criminal Justice—Milwaukee Chapter; National Lawyers Guild—Milwaukee Chapter; State Public Defender of Wisconsin; Vote No on Bail Amendment Committee; Latin American Union for Civil Rights, Inc.; and Casa Maria.

Amicus Curiae brief was filed by *Donald K. Schott* of Milwaukee, for The Milwaukee Young Lawyers Association.

STEINMETZ, J. There are two controlling issues to be considered in this case:

(1) Was 1981 Enrolled Joint Resolution 8 (1981 Assembly Joint Resolution 5) properly submitted to the electors for ratification as a single question pursuant to Article XII, sec. 1[1] of the Wisconsin Constitution?

(2) Did the submission of 1981 Enrolled Joint Resolution 8 (1981 Assembly Joint Resolution 5) comply with

[1] Article XII, sec. 1, Wisconsin Constitution, provides:

"**Constitutional amendments.** SECTION 1. Any amendment or amendments to this constitution may be proposed in either house of the legislature, and if the same shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon, and referred to the legislature to be chosen at the next general election, and shall be published for three months previous to the time of holding such election; and if, in the legislature so next chosen, such proposed amendment or amendments shall be agreed to by a majority of all the members elected to each house, then it shall be the duty of the legislature to submit such proposed amendment or amendments to the people in such manner and at such time as the legislature shall prescribe; and if the people shall approve and ratify such amendment or amendments by a majority of the electors voting thereon, such amendment or amendments shall become part of the constitution; provided, that if more than one amendment be submitted, they shall be submitted in such manner that the people may vote for or against such amendments separately."

the statutory requirements for the amendment of the Wisconsin Constitution?

We accepted this appeal on certification from the court of appeals.

This is an appeal from an order of the Honorable P. Charles Jones, Dane county circuit court judge, granting the Elections Board of the State of Wisconsin (Elections Board) motion for summary judgment. The plaintiffs-appellants, Milwaukee Alliance Against Racist and Political Repression, et al. (Alliance) challenge the validity of an amendment to Article I, sec. 8 of the Wisconsin Constitution revising the right to bail. The challenge is grounded on the assertion that more than one amendment to the state constitution was submitted to the electors for ratification in the form of a single question contrary to Article XII, sec. 1 of the Wisconsin Constitution. The amendment is also challenged on the basis that the question presented to the electors for ratification as part of the submission did not adequately and totally inform them of the nature of the constitutional amendment.

In addition to the briefs filed by the Alliance and Elections Board, an amicus curiae brief was filed on behalf of:

District Council 48, American Federation of State, County and Municipal Employees, AFL-CIO.
Esperanza Unida
National Association for the Advancement of Colored People—Milwaukee Chapter (NAACP)
Milwaukee Urban League
National Association of Blacks in Criminal Justice—Milwaukee and Madison Chapters
National Lawyers Guild—Milwaukee and Madison Chapters.
David Niblack as the duly appointed State Public Defender in Wisconsin

Vote No on Bail Amendment Committee
Latin American Union for Civil Rights, Inc. (LAUCR)
Casa Maria

In addition, an amicus curiae brief was filed by each of the following:

The Assembly Committee on Organization.
The Milwaukee Young Lawyer's Association.

The history of this lawsuit is as follows. It was commenced by the filing of a summons and complaint on March 3, 1981. The Alliance, at that time, also filed an ex parte motion for a restraining order and a motion for a temporary injunction to prevent the submission of the constitutional amendment to the electors for ratification. The ex parte motion was denied by Judge Jones and a hearing was held on March 16, 1981, on the Alliance's motion for temporary relief. On March 23, 1981, Judge Jones denied the Alliance's request for temporary relief.

On April 10, 1981, the Alliance filed an amended summons and complaint and a renewed motion for temporary relief to prevent the Elections Board from taking any further official action with respect to the amendment. A hearing was held on the Alliance's motion on April 30, 1981. Judge Jones issued a temporary injunction on May 13, 1981, enjoining the Elections Board from determining, recording and certifying the results of the vote in the April 7, 1981, spring election, on ratification of the amendment.

On May 1, 1981, the Elections Board, by its attorney, the attorney general's office, filed a motion to dismiss the Alliance's complaint on the grounds that it failed to state a claim on which relief could be granted. On May 14, 1981, Attorney Kevin J. Kennedy, was appointed spe-

cial counsel to represent the Elections Board, pursuant to sec. 14.11 (2), Stats.[2]

On June 24, 1981, the Elections Board filed a petition with this court requesting permission to commence an original action to resolve the issues or alternatively for the Supreme Court to exercise its supervisory jurisdiction. On June 26, 1981, this court ordered the Alliance to file a response which was done on July 3, 1981. The question of original jurisdiction was argued before this court on July 6, 1981. On July 7, 1981, this court issued an order denying the petition. In the exercise of this court's supervisory power, the trial court was directed to give this case priority over all other matters and to expeditiously hear and determine the matter.

In the trial court, the Elections Board filed its answer to the amended complaint. A briefing schedule was set and the parties filed a stipulation acknowledging exhibits and a statement of uncontested facts. Amici curiae briefs were also filed in the trial court.

On October 5, 1981, the matter was argued before Judge Jones, and he issued a memorandum decision on October 14, 1981, vacating the Alliance's temporary relief, granting the Elections Board's motion for summary

[2] Sec. 14.11 (2), Stats., provides, in part:

"(2) EMPLOYMENT OF SPECIAL COUNSEL. (a) The governor, if in his opinion the public interest requires such action, may employ special counsel in the following cases:

"1. To assist the attorney general in any action or proceeding;

"2. To act instead of the attorney general in any action or proceeding, if the attorney general is in any way interested adversely to the state;

"3. To defend any action instituted by the attorney general against any officer of the state;

"4. To institute and prosecute an action or proceeding which the attorney general, by reason of his opinion as to the validity of any law, or for any other reason, deems it his duty to defend rather than prosecute. . . ."

judgment and directing that the results of the election may be certified.

Judge Jones' decision held that the submission of the amendment as a single ballot question was not unconstitutional and that all changes contained in the amendment were designed to carry out a single purpose.

There were earlier legislative attempts to enact similar measures; however, the legislative history of the amendment in its present form began on June 26, 1980, when the Committee on Organization introduced June, 1980, SS. A.J.R. 9, which was adopted by the Assembly and concurred in by the Senate, all on the same day. This constituted the first legislative consideration of the revision of the constitutional right to bail presently at issue. The joint resolution was published by the Secretary of State on August 5, 1980, September 2, 1980, and October 7, 1980, pursuant to Article XII, sec. 1 of the Wisconsin Constitution directing publication for three months preceding the election of the next legislature.

On January 8, 1981, 1981 A.J.R. 5, was introduced. A companion joint resolution was introduced in the Senate as 1981 S.J.R. 3. Public hearings were held on both measures. The Assembly passed the joint resolution on February 5, 1981. On February 17, 1981, the Senate concurred in the matter, and it was published on February 23, 1981, by the Secretary of State as 1981 E.J.R. 8. This constituted the second legislative consideration of the revision of the constitutional right to bail.

On March 3, 1981, the state Elections Board published a Type C notice which contains the full text of the constitutional amendment and the ballot question to be submitted to the voters along with an analysis prepared by the state Attorney General explaining the effect of a "yes" or "no" vote. Once in each of the two weeks immediately preceding the election, every county clerk in

the State of Wisconsin also published this same Type C notice.

On April 7, 1981, the voters overwhelmingly approved the constitutional amendment revising the right to bail to conditional release.

The text of 1981 J.R. 8 reads, in pertinent part, as follows:

"To amend section 8 of article I of the constitution, relating to revising the right to bail and authorizing the legislature to permit circuit courts to deny release on bail for a limited period to certain accused persons (2nd consideration).

"Whereas, the 1979 legislature in its June 1980 special session proposed an amendment to the constitution by Assembly Joint Resolution 9 of the June 1980 Special Session (Enrolled Joint Resolution 76) and agreed to it by a majority of the members elected to each of the 2 houses, which amendment reads as follows:

"SECTION 1. Section 8 of article I of the constitution is amended to read:

"[Article 1] Section 8. *(1)* No person ~~shall~~ *may* be held to answer for a criminal offense without due process of law, and no person for the same offense ~~shall~~ *may* be put twice in jeopardy of punishment, nor ~~shall~~ *may* be compelled in any criminal case to be a witness against himself *or herself.*

"*(2)* All persons ~~shall~~, before conviction, ~~be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great, and the~~ *shall be eligible for release under reasonable conditions designed to assure their appearance in court, protect members of the community from serious bodily harm or prevent the intimidation of witnesses. Monetary conditions of release may be imposed at or after the initial appearance only upon a finding that there is a reasonable basis to believe that the conditions are necessary to assure appearance in court. The legislature may authorize, by law, courts to revoke a person's release for a violation of a condition of release.*

*"(3) The legislature may by law authorize, but may not require, circuit courts to deny release for a period not to exceed 10 days prior to the hearing required under this subsection to a person who is accused of committing a murder punishable by life imprisonment or a sexual assault punishable by a maximum imprisonment of 20 years, or who is accused of committing or attempting to commit a felony involving serious bodily harm to another or the threat of serious bodily harm to another and who has a previous conviction for committing or attempting to commit a felony involving serious bodily harm to another or the threat of serious bodily harm to another. The legislature may authorize by law, but may not require, circuit courts to continue to deny release to those accused persons for an additional period not to exceed 60 days following the hearing required under this subsection, if there is a requirement that there be a finding by the court based on clear and convincing evidence presented at a hearing that the accused committed the felony and a requirement that there be a finding by the court that available conditions of release will not adequately protect members of the community from serious bodily harm or prevent intimidation of witnesses. Any law enacted under this subsection shall be specific, limited and reasonable. In determining the 10-day and 60-day periods, the court shall omit any period of time found by the court to result from a delay caused by the defendant or a continuance granted which was initiated by the defendant.*

"*(4) The* privilege of the writ of habeas corpus shall not be suspended unless ~~when~~, in cases of rebellion or invasion, the public safety ~~may require~~ requires it.

"Now, therefore, be it resolved by the assembly, the senate concurring, That the foregoing amendment to the constitution is agreed to by the 1981 legislature; and, be it further

"Resolved, That the foregoing amendment be submitted to a vote of the people at the election to be held on the first Tuesday of April, 1981; and, be it further

"Resolved, That the question concerning ratification of the foregoing amendment be stated on the ballot as follows:

" 'Bail and other conditions for release of accused persons. Shall section 8 of article I of the constitution be amended so that the legislature may permit courts to deny or revoke bail for certain accused persons; and so that courts may set conditions, including bail, for the release of accused persons to assure appearance in court, protect members of the community or prevent intimidation of witnesses?' "

What is not before this court is the wisdom or constitutionality of the substance of the amendment. The issue, instead, is whether the legislature met the constitutional and statutory requirements for submitting the amendment to the electorate. Thus, the dual issues presented for determination are: (1) did the single question properly advise the public of the changes to the constitution in the amendment so that the electorate could make a rational choice in voting on the issue; and (2) did the question submitted to the voters fully advise them as to the changes to the constitution in the amendment? Collateral to those issues is whether placing the question on the ballot was a mere ministerial function of the legislature or a discretionary act entitled to a presumption of regularity and therefore vulnerable to attack only upon proof beyond a reasonable doubt.

The arguments presented in the trial court and before this court have intertwined the preceding questions with strawmen issues concerning the wisdom of preventive detention,[3] the alleged infringement of basic civil rights,

---

[3] Violation of the presumption of innocence is argued. *See*, however, *Bell v. Wolfish*, 441 U.S. 520, 533 (1979):

"The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial. *Taylor v. Kentucky*, 436 US 478, 485 (1978); see *Estelle v. Wil-*

and the assertion that the amendment was a "rush" job in response to public and political pressure. Those subjects are not before us and have no legal bearing on whether the legislature properly placed the proposed amendment before the people.

Article XII, sec. 1 expressly delegates to the legislature the authority to determine the method for placing proposed constitutional amendments before the people. It reads in relevant part: "it shall be the duty of the legislature to submit such proposed amendment or amendments to the people *in such manner* and at such time as *the legislature shall prescribe* . . . ." (Emphasis added.)

In implementing this constitutionally mandated responsibility regarding amendments, the legislature has adopted statutes to prescribe the manner or form of presentment. Sec. 13.175, Stats., requires a "complete statement of the referendum question upon which the voters shall be requested to vote." Also, in the same section, the legislature requires legislative approval of the precise wording of the question before the question may be submitted to the voters.

*liams*, 425 U.S. 501 (1976); *In re Winship*, 397 U.S. 358 (1970); 9 J. Wigmore, Evidence sec. 2511 (3d ed. 1940). It is 'an inaccurate, shorthand description of the right of the accused to "remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion; . . ." an "assumption" that is indulged in the absence of contrary evidence.' *Taylor v. Kentucky, supra,* at 484 n. 12. Without question, the presumption of innocence plays an important role in our criminal justice system. 'The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.' *Coffin v. United States*, 156 U.S. 432, 453 (1895). But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun."

Sec. 5.64(2), Stats., provides for the form of the ballot. Sec. 10.01(2)(c) provides for Type C notice of a referendum question which requires that the Attorney General provide a statement of the effect of a "yes" or "no" vote on the constitution for the electorate. Sec. 10.06(1)(e) and (2)(f) and (g) provide for notice to county clerks and publication timing.

Article XII, sec. 1 provides that both houses of the legislature must vote affirmatively for the amendment in successive legislative bodies before submitting it to the people. That same constitutional section delegates discretionary authority to the legislature for determining the form of the question placed on the ballot with this direction: "provided, that if more than one amendment be submitted, they shall be submitted in such manner that the people may vote for or against such amendments separately."

The Alliance has argued that Judge Jones placed a burden of proof on them to establish beyond a reasonable doubt that the question submitted to the electorate did not meet the requirements of the constitution. Art. XII, sec. 1. Judge Jones did refer to placing the burden on the Alliance and requiring proof beyond a reasonable doubt. The factual basis of the challenge in this case was agreed to, namely the language of the question as submitted to the electorate and the constitutional provision involved. Therefore, the issue before Judge Jones and in this court is an issue of law, and no burden should have been assessed to either litigant.

The issue is whether the legislature in the formation of the question acted reasonably and within their constitutional grant of authority and discretion. We hold that they did so act.

It is within the discretion of the legislature to submit several distinct propositions as one amendment if they

relate to the same subject matter and are designed to accomplish one general purpose. *State ex rel. Hudd v. Timme,* 54 Wis. 318, 336, 11 N.W. 785 (1882).

The issue before the *Hudd* court involved an interpretation of the same portion of Article XII, sec. 1 which is before this court. That clause reads: "if more than one amendment be submitted, they shall be submitted in such manner that the people may vote for or against such amendments separately." The *Hudd* court held, at 336:

"We think amendments to the constitution, which the section above quoted requires shall be submitted separately, must be construed to mean amendments which have different objects and purposes in view. In order to constitute more than one amendment, the propositions submitted must relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other. Tested by this rule, the propositions submitted to the electors contained but one amendment. It is clear that the whole scope and purpose of the matter submitted to the electors for their ratification was the change from annual to biennial sessions of the legislature."

At 337, in *Hudd,* the court stated:

"We do not contend that the legislature, if it had seen fit, might not have adopted these changes as separate amendments, and have submitted them to the people as such; but we think, under the constitution, the legislature has a discretion, within the limits above suggested, of determining what shall be submitted as a single amendment, and they are not compelled to submit as separate amendments the separate propositions necessary to accomplish a single purpose."

Also, the *Hudd* court stated, at 339:

"The direction in the constitution requiring separate amendments to be submitted separately has no efficacy in determining what constitutes an amendment as distinguished from what constitutes two or more amendments; and as the word 'amendment' is clearly suscepti-

ble of a construction which would make it cover several propositions, all tending to effect and carry out one general object or purpose, and all connected with one subject . . . ."

*State ex rel. Thomson v. Zimmerman,* 264 Wis. 644, 60 N.W.2d 416, 61 N.W.2d 300 (1953) applied the rule of *State ex rel. Hudd v. Timme, supra,* but in applying it to the amendment under consideration, found that amendment incorporated more than one object or purpose and, therefore, the court held that the amendment at issue did not comply with the constitutional requirement, as interpreted in *Hudd.* In *State ex rel. Thomson v. Zimmerman,* the court held at 654:

"It is evident from the preceding paragraph that the amendment proposed by Joint Resolution No. 9 embraces many more changes in the constitution than the accommodation of an area factor in senate-district apportionment. It is evident, also, that the additional changes are not necessary to accomplish the result of giving consideration to area in apportioning the senate. In particular, the designation of assembly-district boundaries has nothing whatever to do with the senate. The assembly as well as the senate is further affected by the amendment of sec. 3, art. IV, Const., which removes the prohibition against counting certain Indians and the military in calculating the population base entitled to representation in each house of the legislature."

The court in *Hudd, supra,* at 335, stated:

"We must determine, then, what is meant by the provision . . . which says, that 'if more than one amendment be submitted, they shall be submitted in such manner that the people may vote for or against such amendments separately.'

"This provision can have but two constructions: First, it may be construed as is contended for by the learned counsel who contends that the amendment under controversy was not properly submitted, that every proposition in the shape of an amendment to the constitution, which

standing alone changes or abolishes any of its present provisions, or adds any new provision thereto, shall be so drawn that it can be submitted separately, and must be so submitted. Such a construction would, we think, be so narrow as to render it practically impossible to amend the constitution; or, if not practically impossible, it would compel the submission of an amendment which, although having but one object in view, might consist of considerable detail, and each separate provision, though all promotive of the same object and necessary to the perfection and practical usefulness thereof if adopted as a whole, in such form that a defeat of one of its important matters of detail might destroy the usefulness of all the other provisions when adopted."

The purpose of the amendment in the present case was to change the constitutional provision from the limited concept of bail to the concept of "conditional release." Even the provision referred to as preventive detention is a part of the general scheme of conditional release. The Alliance argues that the issues of conditional release and anti-monetary bail should have been submitted to the voters as separate questions, because the successful adoption of either one would not have destroyed the usefulness of the other. That is not realistic. When the purpose of the proposed amendment was to change the historical concept of bail with its exclusive purpose of assuring one's presence in court, as defined by common law, to a comprehensive plan for conditional release, the defeat of either proposition would have destroyed the overall purpose of the total amendment. The *Hudd* court held that a single amendment may "cover several propositions, all tending to effect and carry out one general object or purpose, and all connected with one subject." *Hudd, supra,* at 339. That is exactly what the amendment question in this case did. The recourse of members of the electorate who did not agree with the purpose of

conditional release in any of its integral parts was simply to vote "no" to the question, and thereby retain the original provisions of the constitution.

The purpose of the amendment was to continue the guarantee of bail to those entitled to it, to allow release of some persons without requiring money bail but with other reasonable conditions, and at the same time, under a structured system, to hold persons for limited periods without the option of bail when a court determines that such action is necessary to protect the community from serious bodily harm or to protect society's interest in the administration of justice by preventing the intimidation of witnesses. There may be disagreement with the philosophy of that purpose, but the question which was presented to the voters and is challenged here contained integral and related aspects of the amendment's total purpose of adopting the concept of conditional release.

The legislature is "not compelled to submit as separate amendments the separate propositions necessary to accomplish a single purpose." *Hudd, supra,* at 337.

Article I, sec. 8 of the Wisconsin Constitution presently guarantees five basic rights for a person accused of crime. Those five rights are set out in two sentences. The first sentence guarantees the right to due process of law, protects an accused from double jeopardy, and prohibits compelled self-incrimination. The second sentence establishes a right to bail and the privilege of habeas corpus.

The amendment revises the constitutional right to bail as part and parcel of this revision and sec. 8 is accordingly restructured, including some non-substantive language changes. The other four rights guaranteed in Article I, sec. 8 remain unchanged in substance.

The amendment makes six language changes in subs. (1) and (4). In sub. (1), three of the changes result from the substitution of "may" for "shall." Thus, the

phrase "no person shall" is reworded to "no person may." This revision reflects the current view of the proper use of language in legal drafting. A leading authority recommends that a legal draft avoid the common practice of using a negative subject with an affirmative "shall."

"Literally, 'No person shall' means that no one is required to act, so read, it negates the obligation, but not the permission to act, on the other hand, 'No person may' negates also the permission and is, therefore, the stronger prohibition." Dickerson, *The Fundamentals of Legal Drafting*, at 130–31, published for the American Bar Foundation by Little, Brown & Company (1965).

In the context in which "shall" was changed to "may," there is no change in meaning or substance.

Sub. (4) of the amendment was changed as follows:

"*(4) The* privilege of the writ of habeas corpus shall not be suspended unless when, in cases of rebellion or invasion, the public safety may require *requires* it."

That is a language change which effectuates no substantial difference. If the public safety "may require" it, then the public safety "requires" it. It is merely a change from the passive to active voice without a change in substance.

Finally, the Alliance argues adding the words "or herself" to sec. 8(1) was not declared in the question put to the voters and this was required since it involved a substantive change. The proposed amendment in sec. 8(1) reads:

"*(1)* No person shall *may* be held to answer for a criminal offense without due process of law, and no person for the same offense shall *may* be put twice in jeopardy of punishment, nor shall *may* be compelled in any criminal case to be a witness against himself *or herself.*"

Historically, it has never been claimed in Wisconsin that "himself" did not include women. It was understood, due to language usage of 1848 and traditions at that time, when the constitution was originally adopted, that use of the word "himself" included women.[4] Times have changed in language usage and "or herself" was obviously added to update an archaic language form to eliminate any gender based distinction. Had the words "or herself" addition been submitted as a separate question to the voters and been defeated, would anyone have argued that those rights in the constitution applied only to men? To ask that, is to ask the ridiculous. There was no substantive change effectuated by the language changes or alterations referred to, and there was no need to submit them to the voters.

The question as submitted, met all constitutional and statutory requirements as to content and form necessary to adequately inform the public on the purpose of the amendment upon which they were voting.

*By the Court.*—The order of the trial court is affirmed.

---

[4] When a right *was* granted to males only in the original Wisconsin Constitution provisions, it was explicitly stated as follows: "Every male person . . ." (Art. III, sec. 1, *Suffrage.*) This section was amended in 1934 to now read: "Every person. . . ."