STATE of Wisconsin, Plaintiff-Respondent,†

v.

Daniel G. SCHEIDELL, Defendant-Appellant.

Court of Appeals

*No. 97–1426–CR. Submitted on briefs April 10, 1998.—Decided July 1, 1998.*

(Also reported in 584 N.W.2d 897.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mitchell E. Cooper*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

ANDERSON, J. In this appeal, we establish a test for admissibility of "other acts" evidence when the defendant seeks to use the evidence defensively to refute his or her identification as the perpetrator of the crime charged. Under the test, the defendant is not required to demonstrate the same degree of similarity between two incidents which the State must demonstrate when seeking to use "other acts" evidence to prove the defendant's identity. The test requires the trial court to balance the probative strength and relevancy of the "other acts" evidence against

considerations of possible undue consumption of time, confusion of the issues and misleading of the jury. Because the trial court applied the stringent standards of admissibility usually imposed upon the State and denied Daniel G. Scheidell the fair opportunity to present evidence of a third-party similar crime, we reverse his conviction on one count of armed robbery while masked, §§ 943.10(2)(b) and 939.641, STATS., and one count of attempted first-degree sexual assault while masked, §§ 940.225(1)(b), 939.32 and 939.641, STATS. We remand to the trial court for a new trial.

Early in the morning the sound of window blinds crashing to the bathroom floor woke Jennifer D. She went into the bathroom and noticed that the window was open about one foot wider than when she had gone to bed. After closing the window, she went back to bed. Sometime before 5:30 a.m., she awoke to find a man straddling her. He had his hand over her mouth and she felt an object on her neck. Her t-shirt was pulled up exposing her breasts. Jennifer began to struggle with the assailant who started to hit her with an open hand while trying to pull off her panties. She was able to get one hand free and started to hit her assailant. The assailant had a mask over his face and the rest of his head was covered with a green nylon jacket.

Jennifer testified that she could see the assailant's eyes and thought she recognized the individual. She said, "Danno, what the fuck are you doing." The assailant hesitated, pulled back, but then resumed striking Jennifer. Although Jennifer was able to push the assailant off the bed, he immediately pushed her back down on the bed and then she noticed he had a knife with a serrated edge. During the struggle, she called out "Danno" at least five times; each time the assailant hesitated and then continued striking her. Jennifer

was able to bend her legs and kick the assailant in the stomach, forcing him away from the bed. As the assailant walked toward the kitchen, she got off the bed and grabbed a small pistol from her dresser. When she pointed the gun at the assailant and told him to get out, he started running at her. After she cocked the pistol and told the individual that if he did not get out of the apartment she would shoot him, the assailant left the apartment.

Jennifer called the Racine police department and reported the incident. The first officer who responded got a brief account from Jennifer before he saw an individual coming down the stairs in the hallway. Jennifer was in the hallway with the police and she identified Scheidell as her assailant. Scheidell was dressed in a robe or shorts. The officer testified that Scheidell seemed like a person who had just woken up. The officer and Scheidell went upstairs into his apartment where Scheidell gave an exculpatory statement, telling the officer that the last time he had seen Jennifer was at 12:30 a.m. at a local restaurant. After further questioning and a brief search of Scheidell's apartment, he was arrested.

Scheidell was charged with one count of attempted first-degree sexual assault by threat or use of a dangerous weapon and while masked, §§ 940.225(1)(b), 939.641 and 939.32, STATS., and one count of armed burglary while masked, §§ 943.10(1)(a), (2)(b) and 939.641, STATS. On the first morning of the jury trial, the trial court conducted an evidentiary hearing on Scheidell's motion to admit evidence of a similar crime committed while he was in jail awaiting trial on the current charges. According to the offer of proof, approximately five weeks after the attack on Jennifer, Kim C. reported a similar attack. The assault occurred at 5:00

a.m. and the victim was a single white woman living alone in a lower-story apartment. The assailant apparently gained entry through a bathroom window. Like Scheidell, the individual was a slender, white male, approximately 5' 10". He concealed his identity with a mask and a jacket hood. Kim awoke to find the assailant straddling her and holding a large knife. When she screamed he told her to be quiet and she thought the voice sounded familiar. The assailant was unsuccessful in attempting intercourse. The trial court, relying upon *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984), denied Scheidell's motion:

> We don't have any showing that there's any direct connection with the crime that was perpetrated five weeks later to the crime that we are trying here today, and if you look at these, the Denny factors, I think that obviously, and when we're talking about these cases, we're talking with the major issue we're talking about is relevancy, and what they're talking about in this decision to be relevant, these three factors have to be present, and the Court can't make a ruling that these three factors are present.

During the course of the trial, a police officer testified that a left hand print was found on the bathroom wall in Jennifer's apartment near the suspected point of entry. Although the faint outline of three fingers was observable, the print was of no value for comparison purposes. On the last day of trial, Scheidell's counsel sought to admit an impression of Scheidell's left hand and to permit the jury to compare the latent print lifted by the police and the print made by Scheidell. The trial court denied both requests. It concluded that the two prints were made under different circumstances and could mislead the jury. The court also held that expert

testimony would be needed to assist the jury and Scheidell's own expert testified that there were no known experts on the comparison of hand print size.

In his postconviction motion, Scheidell renewed both arguments. He asserted that the only issue in this case was the identity of the assailant. He argued that his identity as the assailant was called into question because the alleged assault of Kim C. was strikingly similar. He contended that the trial court improperly relied on *Denny*, which he reads to be limited to claims by a defendant that a third person had a *motive* to commit the crime the defendant is charged with. Concerning the hand print, Scheidell maintained that the comparison of hand print sizes was within the abilities of the jury, and the court erred in holding that an expert witness was required. The trial court denied Scheidell postconviction relief.

On appeal, Scheidell asserts that the trial court's ruling barring evidence of a similar third-party crime violated his constitutional right to present a defense. He also maintains that the trial court erred in requiring expert foundation evidence on the size of hand prints and not permitting the jury to compare the latent print with his print.

### *Third-Party Similar Crime Evidence*

■

"Evidentiary rulings generally are reviewed with deference to determine whether the circuit court properly exercised discretion in accord with the facts of record and with accepted legal standards." *Michael R.B. v. State*, 175 Wis. 2d 713, 720, 499 N.W.2d 641, 644 (1993). We will reverse such a determination only if the trial court erroneously exercises its discretion. *See id.* "A proper exercise of discretion consists of the

court applying the relevant law to the applicable facts in order to reach a reasonable conclusion." *State v. Jackson*, 188 Wis. 2d 187, 194, 525 N.W.2d 739, 742 (Ct. App. 1994).

Whether a defendant's right to present a defense was violated is, however, a question of "constitutional fact" that we review de novo. *See State v. Heft*, 185 Wis. 2d 288, 296, 517 N.W.2d 494, 498 (1994). "The due process rights of a criminal defendant are 'in essence, the right to a fair opportunity to defend against the State's accusations.' " *State v. Evans*, 187 Wis. 2d 66, 82, 522 N.W.2d 554, 560 (Ct. App. 1994) (quoted source omitted). The right to present evidence "is rooted in the Confrontation and Compulsory Process Clauses of the United States and Wisconsin Constitutions." *Id*. at 82–83, 522 N.W.2d at 560. The rights granted by the Confrontation and Compulsory Process Clauses are fundamental and essential to achieving the constitutional objective of a fair trial. *See Chambers v. Mississippi*, 410 U.S. 284, 294–95 (1973).

Section 904.04(2), STATS., is available to a defendant to use as a shield.[1] *See State v. Johnson*, 184 Wis. 2d 324, 336, 516 N.W.2d 463, 466 (Ct. App. 1994). Scheidell defended in the trial court on the theory of misidentification. His attempt to use the later crime was for the purpose of establishing, by the similarity of the conduct and assailant in each incident, that one

---

[1] Section 904.04(2), STATS., provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

person was responsible for both crimes, and he was not that person because he was in jail when the later crime was committed. Scheidell wants to use "other acts" evidence to exonerate himself. This defensive use of "other acts" evidence is recognized in 2 WIGMORE, WIGMORE ON EVIDENCE § 304, at 252 (Chadbourn rev. ed. 1979):

> It should be noted that ["other acts"] evidence may be also available to *negative the accused's guilt.* E.g., if A is charged with forgery and denies it, and if B can be shown to have done a series of similar forgeries connected by a plan, this plan of B is some evidence that B and not A committed the forgery charged. This mode of reasoning may become the most important when A alleges that he is the victim of *mistaken identification.*[2]

While acknowledging a defendant's ability to use § 904.04(2), STATS., defensively, the State seeks to limit its use by establishing an almost insurmountable threshold of admissibility. The State puts forth a standard of admissibility that melds both "the 'direct connection' element of the three-element test of *Denny*" and the " 'identity' exception for 'other acts' evidence under § 904.04(2)." We reject the State's attempt to impose hard and fast requirements for the admission of "other acts" evidence as a shield.

The State suggests that the "legitimate tendency" test of *Denny* serves as one leg of the test to be applied to the admission of third-party similar crime evidence. In *Denny*, the defendant sought to introduce evidence

---

[2] *See also* 2 WIGMORE, WIGMORE ON EVIDENCE 341, at 307 (Chadbourn rev. ed. 1979):

[T]he principle of similar acts (304, *supra*) can be used to exonerate an innocent accused, where the acts evidencing the plan are those of a third person not the defendant.

that other individuals had the motive to commit the homicide he was defending against. *See Denny*, 120 Wis. 2d at 621, 357 N.W.2d at 16. We established a three-part test that is to be used when a defendant seeks to introduce evidence of third-party motive. First, the third party possessed a "motive" to commit the crime; second, the third party had the "opportunity to commit the crime"; and, third, there must be a "direct connection" between the third party and the charged crime. *See id.* at 625, 357 N.W.2d at 17. We explained the reason for the test, "[E]vidence that simply affords a possible ground of suspicion against another person should not be admissible. Otherwise, a defendant could conceivably produce evidence tending to show that hundreds of other persons had some motive or animus against the deceased—degenerating the proceedings into a trial of collateral issues." *Id.* at 623–24, 357 N.W.2d at 17.

We conclude that *Denny* is not applicable to this case. *Denny* is limited to the introduction of "other acts" evidence to establish "motive" of one or more third parties to commit the charged crime. This case seeks the admission of "other acts" evidence to refute the identification of Scheidell as the assailant. Although "motive" and "identity" are recognized exceptions in § 904.04(2), STATS., they are different concepts. "Motive has been defined as the reason which leads the mind to desire the result of an act. In other words, a defendant's motive may show the reason why a defendant desired the result of the crime charged." *State v. Fishnick*, 127 Wis. 2d 247, 260, 378 N.W.2d 272, 279 (1985) (citations omitted). Whereas, identity "may be thought of as a quality of a person or thing—the quality of *sameness with another person or thing*." 2 WIGMORE, *supra,* § 411, at 478. Because Scheidell seeks admission of the third-

party similar crime evidence to raise a doubt that he is the person who assaulted Jennifer and does not seek to present evidence that one or more third parties may have had a motive to assault Jennifer, the protections of *Denny*'s "legitimate tendency" test are not necessary.

We also reject the State's recommendation that the strict standards governing the introduction of "other acts" evidence to *prove* a defendant's identity govern the admission of "other acts" evidence to *disprove* a defendant's identity. In *Fishnick*, 127 Wis. 2d at 263–64, 378 N.W.2d at 280–81, the supreme court held:

> Where other-acts evidence is used for identity purposes, similarities must exist between the "other act" and the offense for which the defendant is being tried. Similarities which tend to identify the defendant as the proponent of an act also tend to ensure a high level of probativeness in the other-acts evidence. These similarities may be established, for example, where there is a discernible method of operation from one act to the next, or where the other act and the crime charged and their surrounding circumstances are so similar that the incidents and circumstances bear the imprint of the defendant. In order for other-acts evidence to be admitted for purposes of identity, there should be such a concurrence of common features and so many points of similarity between the other acts and the crime charged that it can reasonably be said that the other acts and the present act constitute the imprint of the defendant. [Citations omitted; footnote omitted.]

The stringent requirements for the admission of "other acts" evidence to prove identity are easily under-

stood.[3] It is axiomatic that the State has the burden of proving a defendant guilty beyond a reasonable doubt. *See State v. Ivy,* 119 Wis. 2d 591, 608, 350 N.W.2d 622, 631 (1984). The State is required to present competent evidence of the criminal activity and persuade the jury that it is sufficient to support a verdict of guilty. Thus, the State cannot divert the attention of the jury from the question of the defendant's responsibility for the crime charged to the improper issue of his or her bad character. *See United States v. James,* 555 F.2d 992, 1000 (D.C. Cir. 1977) (quoting *United States v. Phillips,* 401 F.2d 301, 305 (7th Cir. 1968)). As the United States Supreme Court has explained:

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a

---

[3] "We think the standards of relevancy should be stricter when prior-crime evidence is used to prove identity or the doing of the act charged than when the evidence is offered on the issue of knowledge, intent or other state of mind. In identity cases the prejudice is apt to be relatively greater than the probative value." *Whitty v. State,* 34 Wis. 2d 278, 294, 149 N.W.2d 557, 564 (1967) (citation omitted).

764

bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States,* 335 U.S. 469, 475–76 (1948) (citations omitted; footnotes omitted).

Just as axiomatic is the principle that a defendant does not have to prove his or her innocence. *See State v. Sawyer,* 266 Wis. 494, 506, 63 N.W.2d 749, 755 (1954). Notwithstanding the right of the defendant to remain inactive and secure in the presumption of innocence, *see Milwaukee Alliance v. Elections Board,* 106 Wis. 2d 593, 603 n.3, 317 N.W.2d 420, 424 (1982), he or she is entitled to a reasonable opportunity to present evidence which could create a doubt as to guilt, *see People v. Bueno,* 626 P.2d 1167, 1169 (Colo. Ct. App. 1981). When a defendant uses "other acts" evidence to create a doubt as to identity, prejudice to the defendant is no longer a consideration. *See State v. Garfole,* 388 A.2d 587, 591 (N.J. 1978). When the defense uses "other acts" evidence, the fear that the jury will focus on an accused's character and punish the defendant for being a bad person, regardless of guilt of the crime charged, disappears. *See State v. Sullivan,* 216 Wis. 2d 768, 782–83, 576 N.W.2d 30, 37 (1998).

Consequently, where the defendant seeks to use "other acts" evidence to counter "identification," the *Fishnick* mandate, that "there should be such a concurrence of common features and so many points of similarity between the other acts and the crime charged," *id.,* 127 Wis. 2d at 263, 378 N.W.2d at 281, is

not essential to focus the jury on the crime charged and to divert the jury from the defendant's bad character. We are satisfied that when a defendant seeks to offer "other acts" evidence regarding identification, prejudice is no longer a factor and the trial court should use an admissibility standard that concentrates on the simple relevancy as to guilt and innocence. The court must balance against relevancy the considerations of § 904.03, STATS., including "confusion of the issues," "misleading the jury," or "considerations of delay, waste of time, or needless presentation of cumulative evidence."

This is the approach adopted in *Garfole*. In *Garfole*, the defendant was initially charged with multiple crimes arising out of five different episodes occurring within a three-month period within a square one-quarter mile of a junior high school. *See Garfole*, 388 A.2d at 597 (Pashman, J., dissenting). In all of the episodes, the assailant stalked a female victim between twelve and sixteen years of age. In four of the cases, the victim was with a companion. *See id.* In every incident the assailant used a handgun. *See id.* All of the incidents involved the sexual molestation of the victim and in each incident the assailant said he did not want to hurt anyone.[4] *See id.* Through a series of motions prior to jury selection, the prosecutor sought to dismiss the counts arising out of the first four episodes and to prevent the defendant from asking any questions about the four dismissed episodes. The trial court barred the defendant from asking any questions on the first four

---

[4] There was a sixth incident that was strikingly similar to the five episodes the defendant was originally charged with but was not included because it was temporally remote from the first five episodes. *See State v. Garfole*, 388 A.2d 587, 588 n.1 (N.J. 1978).

episodes on the general grounds of irrelevancy. *See id.* at 588–89. The New Jersey Appellate Division affirmed the trial court on the grounds that the episodes were not sufficiently similar. *See id.* at 590. The Supreme Court of New Jersey remanded.

The court acknowledged that "[i]t is well established that a defendant may use similar other-crimes evidence defensively if in reason it tends, alone or with other evidence, to negate his guilt of the crime charged against him." *Id.* at 591. The court expressed the view:

> [W]hen the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily, and subject to rules of competency, an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made.

*Id.*

The New Jersey Supreme Court held that when a defendant offers exculpatory "other acts" evidence, the trial judge must make a discretionary determination which weighs and takes into account the degree of relevance of the proffered evidence against the considerations of undue consumption of time or the substantial danger of confusing the issues or misleading the jury.[5] *See id.* at 592–93.

---

[5] Other jurisdictions have considered and adopted the Garfole standard of admissibility when a defendant seeks to use "other acts" evidence to refute identification by the victim. *See Newman v. United States*, 705 A.2d 246, 25–7 (D.C. 1997) ("[F]or admissibility the crimes need not be identical if 'the totality of the circumstances demonstrates a reasonable

■

In adopting the same standard of admissibility, we stress that the defendant's right to a fair opportunity to defend against the State's charges, *see Jackson*, 188 Wis. 2d at 196, 525 N.W.2d at 743, requires the trial court to resolve close questions of admissibility in favor of inclusion, not exclusion. *See Newman v. United States*, 705 A.2d 246, 256 (D.C. 1997). Section 904.03,

---

probability that the same man attacked both complainants.' "); *State v. Hummert*, 905 P.2d 493, 50–4 (Ariz. Ct. App. 1994) (finding that the trial court erred in refusing to permit the defendant to present evidence of an earlier similar assault where he was excluded by the victim in a photo line-up); *United States v. Stevens*, 935 F.2d 1380, 140–6 (3rd Cir. 1991) ("[A] criminal defendant should be able to advance any evidence that, first, rationally tends to disprove his guilt, and second, passes the Rule 403 balancing test. To garner an acquittal, the defendant need only plant in the jury's mind a reasonable doubt."); *State v. Williams*, 518 A.2d 234, 23–9 (N.J. Super. Ct. App. Div. 1986) (adopts the *Garfole* lower standard of admissibility when a defendant seeks to use "other acts" evidence to refute identification); *Commonwealth v. Jewett*, 467 N.E.2d 155, 158 (Mass. 1984) ("[J]ustice does require the admission of the proffered evidence concerning possible misidentification of the defendant, due to the similarity of the circumstances and importance of the identification in this case . . . . When a defendant offers exculpatory evidence regarding misidentification, prejudice ceases to be a factor, and relevance should function as the admissibility standard."); *United States v. Aboumoussallem*, 726 F.2d 906, 91–2 (2nd Cir. 1984) ("[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword."); *People v. Bueno*, 626 P.2d 1167, 1170 (Colo. Ct. App. 1981) (Evidence that the defendant did not commit the crime he or she is on trial for is relevant and admissible if the evidence of a third-party similar crime may support an inference that the same person was probably involved in both crimes.).

STATS., is "an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985) (discussing the application of RULE 403 which governs the exclusion of relevant evidence).

This standard of admissibility is nothing more than a straightforward balancing of the "other acts" evidence's relevance against considerations such as undue waste of time, confusion of the issues or misleading the jury. We find persuasive the Third Circuit's description of the balancing a trial court must undertake when exercising its discretion:

> [T]he defendant, in order to introduce other crimes evidence, need not show that there has been more than one similar crime, that he has been misidentified as the assailant in a similar crime, or that the other crime was sufficiently similar to be called a "signature" crime. These criteria, although relevant to measuring the probative value of the defendant's proffer, should not be erected as absolute barriers to its admission. Rather, a defendant must demonstrate that the "reverse 404(b)" evidence has a tendency to negate his guilt, and that it passes the Rule 403 balancing test.

*United States v. Stevens,* 935 F.2d 1380, 1404–05 (3rd Cir. 1991).

The trial court erred when it denied Scheidell the opportunity to present evidence of the later assault.[6] In

---

[6] The State insists that Scheidell's offer of proof was limited to a police report of the subsequent assault and that this court should conclude that the evidence was hearsay and Scheidell failed to furnish any exception that would have permitted its

ruling on Scheidell's proffer, the trial court improperly relied upon the strict standards of *Fishnick* that are applied when the State seeks to introduce "other acts" evidence to prove the defendant's identity. Thus, Scheidell was prohibited from the fair opportunity to present potentially exculpatory evidence. The "other acts" evidence he sought to present defensively could support a reasonable inference that would negate his guilt of the charges against him.

■

In determining whether to admit the "other acts" evidence offered by the defendant, the trial court is not to make a preliminary finding that the other crime occurred. *See State v. Schindler*, 146 Wis. 2d 47, 52–54, 429 N.W.2d 110, 112–13 (Ct. App. 1988). When considering the defendant's proffer, the trial court neither weighs credibility nor makes findings that the defendant has proven the occurrence of the other crime. *See id.* The court simply examines the defendant's entire proffer and decides whether the jury could reasonably find that the other crime occurred. *See id.; see also State v. Hummert*, 905 P.2d 493, 504 (Ariz. Ct. App. 1994) ("[T]he trial court should determine if sufficient

---

introduction. The trial court limited its discussion with counsel to the general issue of whether the evidence was admissible and never considered in what form the evidence would be presented to the jury. Scheidell's counsel did not have the opportunity to outline the form in which the evidence would be introduced or to offer an exception to the hearsay rule. Generally, we will decline to address issues that have not been addressed below, especially where the question involves the exercise of discretion by the trial court and the court has not had notice that the issue is before it and has not addressed the issue with any particularity. *See State v. Caban*, 210 Wis. 2d 597, 60–6, 563 N.W.2d 501, 505, *cert. denied*, 118 S. Ct. 328 (1997).

evidence exists that would permit a reasonable person to believe that the [second] victim was truly assaulted.").

The similarities and differences between the crimes are for the jury to weigh and do not serve as a barrier to admissibility. Likewise, the assertion by the State that the second victim is less than credible is not a barrier to admissibility; the opinion of the truthfulness of a witness is not admissible into evidence. *See State v. Jensen,* 147 Wis. 2d 240, 249, 432 N.W.2d 913, 917 (1988). The jury is the arbiter of the weight and credibility of that witness's testimony. *See Reiman Assocs., Inc. v. R/A Adver., Inc.,* 102 Wis. 2d 305, 318, 306 N.W.2d 292, 299 (Ct. App. 1981).

Having concluded that the trial court erred by applying the strict standards of admissibility used when the State seeks to introduce "other acts" evidence to prove the defendant's identity, the remaining question is whether that error was harmless. In *Sullivan,* 216 Wis. 2d at 792, 576 N.W.2d at 41, the supreme court restated the test to be applied:

> The test for harmless error is whether there is a reasonable possibility that the error contributed to the conviction. The conviction must be reversed unless the court is certain the error did not influence the jury.
>
> The burden of proving no prejudice is on the beneficiary of the error, here the State. The State must establish that there is no reasonable possibility that the error contributed to the conviction. [Citations omitted.]

We have carefully reviewed the record and conclude that the State has failed to prove that the error did not contribute to the conviction. This trial was a

clash between the credibility of Jennifer and Scheidell. During postconviction proceedings, the trial court concluded that Jennifer was a compelling, credible witness and the evidence of a third-party similar crime would not have resulted in an acquittal. We do not share the trial court's confidence in the outcome. Scheidell's evidence of a third-party similar crime went directly to the core of the case—Jennifer's identification of Scheidell.

There was other evidence that tends to negate Scheidell's guilt. The responding officer testified that when he first saw Scheidell, he was dressed in a robe or shorts. The officer testified that Scheidell seemed like a person who had just woken up. The police searched Scheidell's apartment, the basement of the apartment building and the alley adjacent to the building and never found the mask, jacket or knife used by the assailant. Further, while still in Scheidell's apartment, the police had him remove his robe and examined him for any marks indicative of a protracted struggle with Jennifer. This examination failed to turn up any marks on Scheidell's body.

Together, the evidence of a third-party similar crime and evidence that the police found no evidence directly linking Scheidell to the assault of Jennifer could raise a reasonable doubt about his guilt. If the jury could have considered this evidence along with the evidence of the third-party similar crime, there is a reasonable possibility that the result would have been different.[7] As the supreme court has emphasized, "[t]he administration of justice is and should be a search for the truth." *Garcia v. State,* 73 Wis. 2d 651,

---

[7] In a similar case, the Colorado Court of Appeals held, "If the evidence is such that reasonable jurors could infer misidentification, then the trial court's rejection of such evidence can not be said to be harmless." *Bueno,* 626 P.2d at 1170.

655, 245 N.W.2d 654, 656 (1976). A jury cannot search for truth if is prevented from considering relevant and admissible evidence on the critical issue of the identity of Jennifer's assailant.[8]

Because the error was not harmless, we remand this case to the trial court for a new trial. Under the rule announced in this opinion, the evidence of the third-party similar crime is so remarkably similar to the crime that Scheidell is charged with that it is to be admitted in the new trial. The probative value of this evidence exceeds considerations of undue consumption of time, the substantial danger of confusing the issues and misleading the jury. Evidence of one similar incident, occurring while Scheidell was in jail, will neither consume a great deal of time nor confuse the jury. We caution that Scheidell must be able to present the jury with the evidence in an admissible form.

### Hand Print Evidence

In the interest of judicial economy, we address the additional issue regarding the hand prints because the issue may arise again on retrial. *See Nischke v. Farmers & Merchants Bank & Trust*, 187 Wis. 2d 96, 102, 522 N.W.2d 542, 545 (Ct. App. 1994). Scheidell challenges the trial court's rulings that the two prints were made under different circumstances which could mislead the jury and that expert testimony would be needed to assist the jury and Scheidell's own expert

---

[8] The Supreme Judicial Court of Massachusetts has noted," [J]ustice does require the admission of the proffered evidence concerning possible misidentification of the defendant, due to the similarity of the circumstances and the importance of the identification in this case." *Jewett*, 467 N.E.2d at 158.

testified that there were no known experts on the comparison of hand print size.

A trial court possesses great discretion in determining whether to admit or exclude demonstrative exhibits. We will reverse such a determination only if the trial court erroneously exercises its discretion. *See State v. Morgan*, 195 Wis. 2d 388, 416, 536 N.W.2d 425, 435 (Ct. App. 1995). We agree with the trial court that the hand print offered by Scheidell was made under different circumstances than the hand print found in Jennifer's apartment and could mislead the jury.

It is the general rule that the test for admissibility of a demonstrative-type exhibit is whether the proffered example was created under facts comparatively similar to the evidence in question. *See Keplin v. Hardware Mut. Cas. Co.*, 24 Wis. 2d 319, 331–32, 129 N.W.2d 321, 327 (1964). In this case, as the proponent of the exhibit, Scheidell had the burden to establish that the example of the hand print he offered was made under similar circumstances as the hand print "lifted" by the police. *See State v. Jenkins*, 168 Wis. 2d 175, 188, 483 N.W.2d 262, 266 (Ct. App. 1992). Scheidell offered no evidence that the hand print he proffered was made on a surface similar to the bathroom wall in Jennifer's apartment, that it was made on a vertical surface, or that it was made with the same force and pressure. We conclude that the trial court correctly exercised its discretion in refusing to admit Scheidell's exhibit.

*By the Court.*—Judgment and order reversed and cause remanded.